UNITED STATES, Appellee,

v.

Algernon LUCAS, Airman First Class, U. S. Air Force, Appellant.

No. 34,138.
ACM 22126.

U. S. Court of Military Appeals.

June 26, 1978.

Major Gary C. Smallridge argued the cause for appellant. With him on the brief

were Colonel B. Ellis Phillips, Colonel Robert W. Norris, and Major Bruce R. Houston.

Major Alvin E. Schlechter argued the cause for appellee. With him on the brief was Colonel Julius C. Ullerich, Jr.

Opinion of the Court

FLETCHER, Chief Judge:

Contrary to his pleas to both specifications and the charge, the appellant was found guilty at a general court-martial of the wrongful use and possession of heroin, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The court members sentenced him to a bad-conduct discharge, confinement at hard labor for one year, forfeiture of all pay and allowances, and reduction to the rank of Airman Basic. These findings and the sentence were approved by the convening authority and by the United States Air Force Court of Military Review.

A brief exposition of certain uncontroverted facts in this case is necessary to understand the issues embraced in this appeal and our resolution thereof. On March 10, 1976, Major James A. Mitchell was appointed as military defense counsel for the appellant in a pretrial investigation concerning the original charges preferred against him. At this hearing on March 11, 1976, and after cross-examination by this defense counsel, the investigating officer considered testimony and a written statement of Airman Basic Stephen R. Lane (appellant's roommate) concerning the charged misconduct of the appellant. The substance of his testimony was that, with certain qualifications,[1] he never saw the appellant use heroin during the period in question. On May 11, 1976, the pretrial investigation was reopened to examine additional drug charges against the appellant during the same period. At this time, the appellant was represented by Truman E. Coles, a civilian defense counsel. Other than the appellant's consent to this change in representation, there are no particulars

---

1. Airman Basic Lane did state that on one occasion his view of the appellant was blocked when several members of a group, in which the appellant was situated, were using heroin.

in the record of trial as to the manner in which this change was accomplished. In any event, additional testimony and statements were taken from Airman First Class Mark Jones, who named six service members as well as Lane and the appellant as users of heroin around the 26th or 27th of January 1976. After the investigation and prior to referral of the charges, the civilian defense counsel requested the staff judge advocate to make these six prospective witnesses[2] and Lane available to the defense counsel for interviews and, in event of referral, to make them available for trial. The staff judge advocate denied these requests because the civilian defense counsel had failed to synopsize the testimony of these witnesses in accordance with Paragraph 115, Manual for Courts-Martial, United States, 1969 (Revised edition). However, he did provide defense counsel with the civilian addresses of these service members, except Lane, who were all discharged from the service at that time.

At the appellant's court-martial, his civilian defense counsel made a motion to dismiss the charge and specifications on the basis of the staff judge advocate's denial of the requests for the interviews and appearances of witnesses who might be material to the defense. He argued that the Government's action in releasing from the service prospective witnesses who may be material to the accused's defense effectively frustrated his constitutional rights to due process and to a fair trial. The record of trial contained the following exchange on this motion:

DC: . . . And I believe that if the prosecution intended to proceed against Lucas in the first place, in the manner that they have thus far, that in some way the testimony or the statements of all these witnesses should be available to defense counsel and it may be that they should be available to testify.

MJ: Are there any statements made by these individuals relating to this case in writing at this time?

TC: No, sir.

MJ: Well, Mr. Coles, your motion to dismiss is denied; however, as far as requesting these people as witnesses, of course, if you wish to restate your request, say, after pleadings, you may do so. However, so I can make an intelligent decision whether or not I should order the Government to attempt to locate them, of course, and if located, subpoena them, I would have to have from you an indication of what you would expect these people to testify concerning. I mean, I would have to know obviously whether or not they would have anything to say that's relevant to this case. I'm not going to order the trial counsel to subpoena people or even attempt to locate them if they don't have anything relevant to say, so if you want to renew your request you will be allowed to do that at a later time. However, I would have to be furnished with a synopsis of what you would expect these people to testify to, all right?

The issue granted for review was:

I

WHETHER THE FAILURE OF THE GOVERNMENT TO PROVIDE DEFENSE COUNSEL AN OPPORTUNITY TO INTERVIEW CERTAIN POTENTIAL WITNESSES WAS A DENIAL OF DUE PROCESS OF LAW.

This granted issue is simply too narrow an inquiry to do justice to the legal subtleties involved in the appellant's case. We believe they are more clearly addressed by examining two additional but particular questions raised plainly by the record of trial, the decision of the Court of Military Review and the appellate briefs.

II

WHETHER THE FAILURE OF THE GOVERNMENT TO PRODUCE THE WITNESS LANE AND HIS PRETRIAL STATEMENTS UPON REQUEST OF THE DEFENSE DENIED THE APPELLANT A FAIR TRIAL IN VIEW OF THE EXCULPATORY NATURE OF HIS PRETRIAL STATEMENTS.

2. Nixon, Jenkins, Montgomery, Lumm, Florez, Kimbar.

## III

WHETHER THE CONDUCT OF THE GOVERNMENT IN MISHANDLING THE APPELLANT'S WITNESS REQUEST EFFECTIVELY FRUSTRATED HIS RIGHT TO SECURE WITNESSES UNDER THE SIXTH AMENDMENT AND ARTICLE 46, UNIFORM CODE OF MILITARY JUSTICE, SO AS TO CREATE A REASONABLE POSSIBILITY OF PREJUDICING THE FINDINGS OF GUILTY AGAINST HIM.

### I

■ The initial question to be resolved in the case at bar is whether the Government has a constitutional duty to secure from the six witnesses, excluding Airman Basic Lane,[3] statements concerning their involvement in the case or to produce these named witnesses for questioning by the defense, because of the mention of their names in an inculpatory way at the pretrial investigation. This inquiry embraces juridically the assertion by the defense of a constitutional right to general discovery for an accused at a criminal trial in order to test all possible defenses or sources thereof. In fact, at this court-martial, the appellant's civilian defense counsel argued that the Government's release from active duty of these prospective witnesses who "perhaps know something about the charges against my client" violated the appellant's rights to due process and to a fair trial as guaranteed by the Constitution. The Supreme Court has clearly held that no general right to discovery exists in a criminal case. *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). Moreover, "the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded . . . ." *Wardius v. Oregon*, 412 U.S. 470, 474, 93 S.Ct. 2208, 2212, 37 L.Ed.2d 82 (1973), absent the concerns expressed in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). There is no showing in the record of trial

that the Government interrogated these former service members and received "evidence favorable to the defendant" or that such a consideration motivated their discharge from the service. *See Brady v. Maryland, supra.* The situation involving these six particular service members is not one in which the Government is in possession of evidence of such substantial value to the defense that "elementary fairness" would require its production for examination by the defense. *See United States v. Agurs*, 427 U.S. 97, 110, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Accordingly, the appellant was not denied constitutional due process or a fair trial when the staff judge advocate failed to produce the requested six witnesses for interviews and the military judge denied the defense counsel's motion for dismissal based on that particular inaction.

### II

■ The second question to be resolved on review is whether the Government had a constitutional duty to produce the written statements and transcribed testimony of Airman Basic Lane upon defense request at the court-martial. *See United States v. Agurs, supra; Brady v. Maryland, supra.* The Court of Military Review, on examination of the record of trial, found that Lane's statements "bore to some degree on the accused's guilt or innocence" but, in view of the compelling and strong evidence of the accused's guilt, they would not affect the findings of guilt reached by the court-martial. However, we believe this potential evidence to be to some extent exculpatory and its withholding must necessarily be tested for propriety within the parameters of the constitutional protection espoused in *Brady v. Maryland, supra.*

The fair trial considerations enunciated in *Brady v. Maryland, supra*, were motivated by concern on the part of the Supreme Court with the suppression by the Government of evidence favorable to the defense,

---

**3.** Due to the existence of written and transcribed statements known to be in the possession of the Government and found material to the appellant's defense, and possibly exculpatory, the discovery right to Lane's statement will be treated separately.

rather than a right to discovery[4] for an accused in a criminal case. Generally, the production of this type of evidence is required and reversal mandated where, after trial, such information is discovered which was known to the prosecution but which was unknown to the defense. *United States v. Agurs, supra* at 103, 96 S.Ct. 2392; *Giles v. Maryland,* 386 U.S. 66, 96, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967) (White, J., concurring in the judgment). Many courts have held that the Government, under *Brady v. Maryland, supra,* need not furnish the accused with information he has or which through reasonable diligence, he could obtain himself.[5] As has been stated[6]:

> The purpose of *Brady* is to assure that the accused will not be denied access to exculpatory evidence known to the government but unknown to him. Irrespective of whether the statement here was exculpatory evidence under *Brady,* a question we do not reach, there is no *Brady* violation when the accused or his counsel knows before trial about the allegedly exculpatory information and makes no effort to obtain its production.

The purpose of the defense request for statements of Airman Lane was to determine the materiality of his testimony for the purpose of justifying a request for his presence as a witness at trial in aid of the defense. Contrary to the response of the government counsel at trial,[7] such statements by Lane did exist and were a part of the record of the pretrial investigation. Contrary to the assertion of the civilian defense counsel in presenting his motion, these statements in Lane's case were available to the defense at the pretrial investigation. Moreover, there is no indication whatsoever in the record of trial that the originally appointed military counsel failed to inform the civilian defense counsel of the content of Lane's statements or that the accused was not served with a copy of the substance of Lane's testimony, in accordance with Article 32(b), UCMJ, 10 U.S.C. § 832(b).

Consequently, we believe lack of diligence on the part of the trial defense counsel, rather than suppression by the prosecutor, ultimately prevented the statements of Lane from going before the military judge. In light of the above cited cases, we find no violation of the principles of *Brady v. Maryland, supra,* in the non-production at trial of Lane's statements, or of Lane himself.

### III

The final question to be answered in our review of this case is whether the appellant's conviction should be reversed on account of a possible frustration of his right as a matter of constitutional and military due process to secure witnesses "material" to his defense. More particularly, we must examine whether the conduct of the staff judge advocate and the trial counsel caused the military judge to err prejudicially in denying the defense motion to secure witnesses for his court-martial.[8] Such right to compulsory process to obtain material witnesses at a court-martial accrues to the military accused under the Sixth Amendment and Article 46, UCMJ, 10 U.S.C. § 846.[9] If error is found, we must then

---

4. *See United States v. Kaplan,* 554 F.2d 577 (3rd Cir. 1977).

5. *See United States v. Prior,* 546 F.2d 1254, 1259 (5th Cir. 1977).

6. *United States v. Cravero,* 545 F.2d 406, 420 (5th Cir. 1977).

7. The record of trial contains no explanation of the misinformation provided to the military judge on the existence of such statements. The result reached in this case should not be viewed as condonation of such prosecutorial conduct. *See* A. B. A. Standards Relating to the Prosecution Function, § 3.11 (1971). *See also Jones v. Jago,* 575 F.2d 1164 (6th Cir. 1978).

8. In particular the motion to produce Lane for interview can reasonably be read to embrace a request for his production at trial as a witness, especially in light of the misinformation provided to the military judge.

9. *See United States v. Williams,* 3 M.J. 239 (C.M.A.1977); *United States v. Jouan,* 3 M.J. 136 (C.M.A.1977); *United States v. Willis,* 3 M.J. 94 (C.M.A.1977); *United States v. Carpenter,* 1 M.J. 384 (C.M.A.1976).

review the record of trial to determine whether there is any possibility that the appellant was prejudiced because his conviction resulted from the improper denial of the motion.[10]

In initially addressing these issues it is first necessary to distinguish between the requests for the six witnesses for whom no pretrial statements were known to exist by the Government and the demand for the witness Lane. In the latter case, pretrial statements and testimony existed which could have readily indicated to the military judge the content of Lane's expected testimony at trial. Moreover, it must be noted that the staff judge advocate refused to provide defense counsel with all the requested witnesses despite his access to the pretrial investigation and Lane's statements. Similarly, the trial counsel's incorrect responses to the military judge's questions in open court further effectively prevented a proper review for "materiality" by the military judge.

■ There is no indication in the record of trial as to the content of the expected testimony of the six service members incriminated by the statements of witnesses at the pretrial investigation. In fact, there is not even a legitimate averment [11] of "materiality" by the defense counsel to put the military judge on notice that the witness may offer proof to negate the Government's evidence or support the defense. *United States v. Iturralde-Aponte*, 1 M.J. 196, 198 (C.M.A.1975). Consequently, in view of the patent absence of "materiality" as defined for the purpose of these witness requests, no violation of the appellant's right to compulsory process to secure witnesses can reasonably be said to have occurred.

■ Moreover, no authority can be found in the Code, Manual, or military case law

for securing witnesses for pretrial interview by defense counsel or compulsory appearance at trial simply because of their mention in an inculpatory manner at a pretrial investigation. Accordingly, absent an averment of "materiality" by the defense counsel, the military judge did not err in denying the first group of requests for interviews and appearance at trial.

■ However, with respect to the witness Lane, additional considerations warrant a different conclusion on the appellant's request for his production at trial. We agree with the Court of Military Review that ". . . the staff judge advocate was charged with the knowledge of Lane's statements." Likewise, we also believe that the trial counsel had the obligation to be familiar with the pretrial investigation report, a part of the record of the proceedings, so as to correctly respond to the military judge's question on this matter. Article 38, UCMJ, 10 U.S.C. § 838. In view of these failures in proper prosecution by the Government in the present case, and the aforementioned determination of materiality of the testimony of Lane by this Court, we conclude that the government effectively frustrated the appellant's right to secure material witnesses and caused the military judge to err in denying the defense motion.[12]

■ Despite the decisions of this Court mandating abatement of the proceedings against an accused at the trial level for non-production of a "material" witness, an otherwise valid conviction will not always be reversed on appeal on a finding of materiality by this Court. Where evidence in the record of trial demonstrates beyond a reasonable doubt that the unadmitted testimony would not have tipped the balance in favor of the accused and the evidence of guilt is so strong as to show no reasonable

**10.** *See generally Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Moore*, 1 M.J. 390, 392 (C.M.A.1976).

**11.** *Greenwell v. United States*, 115 U.S.App. D.C. 44, 46, 317 F.2d 108, 110 (1963); *United*

*States v. Sweeney*, 14 U.S.C.M.A. 599, 603, 34 C.M.R. 379, 383 (1964). *See generally Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**12.** *See* note 8, *supra*.

possibility of prejudice [13] to the appellant, reversal is not mandated. Due to the presence in the record of trial of the statement of Lane and the substance of his testimony subject to cross-examination at the pretrial investigation, we may, as did the Court of Military Review, properly assess the legal prejudice resulting from the failure to produce him at the court-martial. Our review for prejudice of the record of trial substantially comports with the assessment of the court below. Accordingly, reversible error did not occur.

The decision of the United States Air Force Court of Military Review is affirmed.

Judge PERRY concurs.

COOK, Judge (concurring in the result):

As to that part of the defense request for production of certain persons mentioned in testimony received at the Article 32 investigation for the purpose of pretrial interview, I note that none of the procedures that would enable the defense to examine a possible witness before trial were invoked, even though civilian counsel had been specifically apprised of them. Further, the appellant failed to provide any evidence to indicate that the requested individuals had information material to his defense. Consequently, in my opinion, the trial judge properly rejected the defense motion to dismiss.[1] For this reason alone, I would affirm the decision of the Court of Military Review.

In regard to other aspects of the principal opinion, I disagree with its view of trial counsel's comment as to the nonexistence of pretrial statements by the requested witnesses. As Lane, one of those witnesses, had testified at the Article 32 investigation and earlier had given a statement to a special agent, the opinion implies that trial counsel should be censured for his negative

reply to the judge's question whether there were "any statements made by these individuals relating to this case." I perceive in the record a reasonable explanation for that answer, and I do not condemn trial counsel for it.

The principal opinion acknowledges the probability that the military defense counsel who represented the accused at the Article 32 investigation had told civilian defense counsel about Lane's testimony and statement. I think the probability rises to the level of virtual certainty when consideration is given to the fact that civilian counsel appeared in the investigation itself before it was concluded, and later represented the accused at a hearing to determine whether he should be retained in confinement. Counsel's comments at the detention hearing leave no doubt in my mind that he at least knew about Lane's testimony and statement. The principal opinion also acknowledges the probability that the accused had received a copy of the Article 32 proceedings, as required by the Article. Since civilian defense counsel was officially in the case before the completion of the Article 32 investigation, I think it more than likely that he was in possession of, or had read, the accused's copy of Lane's testimony and statement. Consequently, I am certain that trial counsel believed that civilian counsel knew about the Lane statements. I believe, too, he considered that fact when he responded to the trial judge's question.

To understand trial counsel's negative reply, I believe the trial judge's question must be considered, not by itself, as the principal opinion considers it, but in the context of the remarks by civilian counsel that immediately preceded it. In my opinion, these remarks demonstrate that trial counsel answered as he did because he believed defense counsel's remarks concerned the wit-

---

13. *Cf. Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972); *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

1. Substantively, the motion should have been a motion for appropriate relief, that is, to subpoena the witnesses as provided by Article 46 or to depose the witnesses under Article 49, Uniform Code of Military Justice, 10 U.S.C. §§ 846 and 849, respectively.

nesses other than Lane, since the defense had Lane's statements; and, as the trial judge's question was predicated upon those remarks, he concluded it also pertained only to those witnesses. The relevant interchange is as follows:

> IDC: And I believe that if the prosecution intended to proceed against Lucas in the first place, in the manner that they have thus far, that in some way the testimony or the statements of all these witnesses should be available to defense counsel and it may be that they should be available to testify.

> MJ: Are there any statements made by these individuals relating to this case in writing at this time?

> TC: No, sir.

Although I would not condemn trial counsel for what to me was an honest mistake in his understanding of the trial judge's question, I recognize that even such a mistake might result in harm to an accused. However, as the principal opinion demonstrates, no possibility of prejudice exists. For this reason, I, too, join in the affirmance of the decision of the Court of Military Review.