UNITED STATES, Appellee,

v.

Gregory G. HORSEY, Private First Class, U. S. Marine Corps, Appellant.

No. 33,389.

NCM 76–1531.

U. S. Court of Military Appeals.

Jan. 2, 1979.

Appearances: For Appellant—*Lieutenant Robert R. Sparks, Jr.*, JAGC, USNR (argued); *Captain G. M. Potter*, USMC.

For Appellee—*Captain Mark M. Humble*, USMCR (argued); *Lieutenant Colonel P. N. Kress*, USMC (on brief); *Lieutenant Commander N. P. DeCarlo*, JAGC, USN.

Opinion of the Court

FLETCHER, Chief Judge:

At a general court-martial and contrary to his pleas, the appellant was found guilty of attempted robbery, conspiracy to rob, and robbery, in violation of Articles 80, 81 and 122, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 881 and 922, respectively. He was sentenced by the military judge sitting alone to a dishonorable discharge, confinement at hard labor for six years, total forfeitures and reduction to the lowest enlisted pay grade. Both the convening authority and the Navy Court of Military Review approved these findings and sentence without change.

The introductory facts necessary to our opinion are summarized as follows. On the evening of December 15, 1975, five Marines —Hill, Robinson, Johnson, Durkin and Wilson—enroute across a parade ground at Camp LeJeune, were robbed by two men. One man held a gun on the victims, while the second man frisked them and took their valuables. All the victims had the opportunity to observe the robbers. The next day at the post exchange, three of the victims,[1] by accident, spotted the appellant and recognized him as the "frisker". The remaining two victims[2] did not have any or sufficient opportunity in the exchange to observe the appellant and identify him as one of the robbers. The appellant was arrested. What transpired next in this case is somewhat confusing due to the number of victims and the apparently diverse treatment they received from government investigators. Four of the victims[3] acknowledged that they were walked through a corridor of cells in the old brig, one of which contained the appellant, for the purpose of identifying him as one of the robbers. There was also a stipulation of fact that all the victims were shown photographs at the office of the Naval Investigative Service for the purpose of identifying persons involved in the robbery.

At the appellant's court-martial, his trial defense counsel made a motion for production of certain materials purportedly in the possession of the Government. He requested the results of the display of photographs by government agents to several victims of the charged robbery, the photographs used, and the results of a "walk through the brig" identification procedure used by government agents prior to trial. The defense counsel requested these materials for the purpose of impeaching these witnesses' identifications of the appellant as a purported robber. The appellant's defense at trial was alibi and mistaken identification by the victims of the robbery. As an alternative to non-production, he requested the charges against the appellant be dismissed. The trial counsel initially opposed the motion by asserting that no photo display or lineup took place. After extensive proceedings on this issue, the military judge ruled[4] that:

MJ: It's very difficult to know just what took place at the NIS office other than what the five alleged victims have testified. From what they have said it would appear that there was some sort of confrontation and that some photographs were shown. Whether or not the accused's photograph was shown is really unknown. One witness has testified that he was shown the accused's photograph on an ID card. Although I feel that the investigator's inability to tell us what happened at the NIS office on the 16th of December is absolutely inexcusable I don't feel at this point at least that it requires a dismissal of the charges. I think it does require that the court exclude any testimony concerning the identifications by alleged victims of this accused that took place on that day or on subse-

---

1. Johnson, Durkin and Robinson.

2. Hill, and Wilson.

3. With the exception of Hill.

4. The propriety of this action with respect to its effect on subsequent identifications was not an issue granted for review by this Court.

quent days up until today without a showing that their identification has not in some way been tainted by the events of that day. Now when I speak of "that day" I'm speaking too loosely. I'm talking about the time from when the alleged victims were in the NIS office. The law as I understand it, as it should be applied to this situation, is that the ID card and the identifications now today must be shown to be independent of what happened on that particular day. Is that clear to trial counsel?

The following issue was specified for review in this case:

WHETHER, IN LIGHT OF THE TRIAL JUDGE'S RULING (R. 78) APPELLANT WAS ENTITLED TO RELIEF UNDER THE PRINCIPLES OF *BRADY V. MARYLAND*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), AND *UNITED STATES V. AGURS*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), OR WAS SUBJECT TO THE PRINCIPLE OF HARMLESS ERROR.

The threshold issue before this Court is whether the requirements for a fair trial enunciated in *Brady v. Maryland, supra*, constitutionally mandated the production of the materials noted above which were particularly requested by the appellant's trial defense counsel.

The heart of the holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment.

*Moore v. Illinois*, 408 U.S. 786, 794, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972).

Accordingly, we must test the ruling of the military judge on the defense motion to see if it conflicts with the holding of the Supreme Court in *Brady v. Maryland, supra*, its progeny and the principles of fair trial articulated therein.

■ The record of trial indicates that the Government could not produce any agent of the Naval Investigative Service who would admit showing photographs to the victims, possessing the photographs, or conducting the walk through the old brig. We, too, of course, find intolerable this breakdown in communication between the prosecutor and his investigators. *See March v. United States*, 362 A.2d 691, 703 (D.C.C.A.1976). However, other government witnesses, i. e. the victims, did testify under cross-examination before the military judge to the occurrence of these events. Therefore, in light of this revealing testimony elicited from the other government witnesses on these pretrial identification procedures, we hesitate to equate this prosecutorial conduct with the suppression proscribed in *Brady v. Maryland, supra*. *See United States v. Agurs, supra* at 106, 96 S.Ct. 2392.

■ Assuming for any reason that this prosecutorial conduct might properly be deemed suppressive, the facts of this case must be measured against the remaining criteria of *Brady v. Maryland, supra*, to justify reversal of this conviction. A major component of that decision was that the evidence withheld must be favorable, that is, tending to exculpate the accused or reduce his punishment. *Brady v. Maryland, supra* at 87–88, 83 S.Ct. 1194. Appellate defense counsel contends that the requested material is favorable because one witness purportedly identified two photographs, other than the appellant's, as the robbers. Moreover, he asserts that a second witness failed to identify the appellant as a robber. Accordingly, it is argued such inconsistencies would impeach the identification testimony of these witnesses and tend to exculpate him.

We find such an interpretation of the testimony in the record of trial illusory and primarily self-serving. The first contention is based on an argument by trial defense counsel that the Government is required to make full disclosure to the defense of everything pertaining to the offense in this case. In providing a basis for this argument, the trial defense counsel speculated that government agents had shown to the victims photographs of two other suspects

subsequently cleared by their investigation and this photo display was a proper matter for cross-examination, and, assumedly, discovery. Our review of the record casts significant doubt upon whether in fact these two particular photographs were shown to the victims. Moreover, there is simply no evidence from the testimony of these victims that they identified these photographs as being of the robbers, or identified anyone else but the appellant as the frisker. As to the second contention, only one witness admitted to being shown a photograph of the appellant which he testified he promptly identified. The other witnesses testified that they were not shown his photograph. The assertion of the defense counsel of misidentification by these other witnesses is mere conjecture, without significant support in the record of trial.

It is clear as a matter of law that the holding of the Supreme Court in *Brady v. Maryland, supra,* was not meant to embrace, as a matter of constitutional due process, a tool of general discovery for the defendant in a criminal case.[5] A review of the record of trial demonstrates that the walk-through identification was unanimously unfavorable to the appellant. As indicated above, the favorability of the photo display is mere conjecture. The holding of the military judge that these identification techniques were to be excluded from the trial on grounds of the suspicious circumstances surrounding them is not a sound basis alone for concluding they were favorable to the accused. Accordingly, no violation of the constitutional principles articulated in *Brady v. Maryland, supra,* is perceived.

■ In any event, the evidence suppressed not only must be favorable under *Brady,* but it also must be *material* to justify reversal by appellate courts. The mere possibility that an item of undisclosed information might have helped the defense or might have affected the outcome of the trial does not establish materiality in the constitutional sense. *United States v. Agurs, supra* at 109, 110, 96 S.Ct. 2392. The evidence must be highly probative of the innocence of the accused in more than an isolated way. As was said in *United States v. Agurs, supra* at 112–13, 96 S.Ct. at 2402 (footnote omitted):

> It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.

The weakness of the appellant's case becomes most apparent with respect to this factor of the test in *Brady v. Maryland, supra.* Admittedly, the number of witnesses who testified and the different methods for each witness' pretrial identification is at times as found by the trial judge both confusing and suspicious. Nevertheless, the record of trial is clear that each had the opportunity to observe the appellant at the time of the offense. Moreover, three of the witnesses on their own initiative identified the appellant as one of the robbers at the post exchange. Finally, the four victim witnesses who testified on the merits all then positively identified the appellant as the "frisker" robber on the night in question without reliance on the events which took place at the office of the Naval Investigative Service or the old brig. In view of these other independent, positive and detailed identifications, and the trivial nature of the proffered inconsistencies, we cannot say that the requested evidence rises to the level of materiality contemplated by *Brady v. Maryland, supra,* requiring reversal.[6]

The decision of the United States Navy Court of Military Review is affirmed.

Judges COOK and PERRY concur.

5. *See Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). *See also United States v. Agurs,* 427 U.S. 97, 106, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Moore v. Illinois,* 408 U.S. 786, 794, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); *United States v. Lucas,* 5 M.J. 167, 170–71 (C.M.A.1978).

6. *See March v. United States,* 362 A.2d 691, 703 (D.C.C.A.1976).