UNITED STATES, Appellant,

v.

Sergeant First Class John L. BROW-
ERS, 508–66–8974, United States
Army, Appellee.

Misc. Docket No. 1985/1.

U.S. Army Court of Military Review.

10 April 1985.

543

Captain Howard G. Cooley, JAGC, argued the cause for the appellant. With him on the brief were Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Major Joseph A. Rehyansky, JAGC, and Captain John J. Park, Jr., JAGC.

Captain Annamary Sullivan, JAGC, argued the cause for the appellee. With her on the brief were Colonel William G. Eckhardt, JAGC, Lieutenant Colonel William P. Heaston, JAGC, and Captain Harry L. Williams, Jr., JAGC.

Before WOLD, FELDER and NAUGHTON, Appellate Military Judges.

## OPINION OF THE COURT

WOLD, Senior Judge:

In this case the Government appears in the role of appellant pursuant to Article 62, Uniform Code of Military Justice, [hereinafter UCMJ], 10 U.S.C. § 862 (1982), which authorizes government appeals in certain circumstances, and requests this Court to vacate findings of not guilty entered by the trial judge below.

I. *Background and History*
*Of The Case*

On 23 July 1984, appellee was charged with four specifications of lewd and lascivious acts on two soldiers, a Private P and a Private M, in violation of Article 134, UCMJ, 10 U.S.C. § 934. Preliminary court proceedings pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a), occurred on 17 and 18 October 1984 at Mannheim, Federal Republic of Germany. During these sessions, appellee requested and was granted a trial by military judge alone and the parties litigated a defense motion to suppress appellee's pretrial statement on the grounds that it was unwarned and involuntary. Having decided the suppression motion against appellee and having ascertained that the defense had no other objections, the judge then admitted appellee's pretrial statement into evidence.

The parties then litigated a defense witness request with the result that the judge directed the trial counsel to obtain certain defense witnesses, including a First Sergeant Gutierrez (for further proceedings on a defense motion to dismiss) and a Sergeant Harper (for testimony on the merits). The trial counsel was to arrange for First Sergeant Gutierrez's appearance in time for another Article 39(a) hearing prior to 28 November. The exact date for this hearing was to be set by the judge when the trial counsel informed the judge of the specific date arranged for the First Sergeant's appearance. As the final order of business during the hearings of 17 and 18 October, the judge set 28 and 29 November as the dates for trial on the merits.

On 29 November, however, a third Article 39(a) session was held instead of the scheduled trial on the merits. During that session the judge denied the pending motion to dismiss, appellee entered pleas of not guilty, and a new trial date was set for 5 and 6 December. The trial counsel assured the judge that "... the government can have the witnesses ready for its case on the 5th and can have ... the Stateside witnesses here, who are going to testify on the merits for the defense, on the 6th."

The court reconvened on 5 December. At that time, the trial counsel informed the judge that Private P and Private M, the alleged victims, were absent and that the government requested a sixteen-day continuance to obtain their presence. Private P had departed on a thirty-day emergency leave on 20 November due to a death in his family and was due to return to his unit by 19 December. Private M had been reported absent without leave [hereinafter AWOL] as of 0600, 4 December. The trial counsel reported that Private M had been seen in the local area with his girlfriend and that producing him was "... just a matter of finding him at his girlfriend's...."

The defense opposed the motion for continuance, arguing that the government had already been granted two continuances. In addition, the defense argued that further delay would create mental anguish for appellee which could impair his duty performance and thereby impair his ability to produce favorable character witnesses. The trial counsel responded that the case involved witnesses from both the United States and Germany and that the trial counsel had been belatedly informed of Private P's departure on emergency leave. Further, the trial counsel stated that neither Private P's emergency leave nor Private M's AWOL had occurred through the fault of the government. Finally, the trial counsel emphasized the fact that without the missing witnesses the government had no case. The judge denied the request for a continuance. In announcing his ruling, the judge made several observations. First, that there was no reason to believe that Private M, the AWOL witness, would be available in the foreseeable future; second, that the government had failed to keep track of Private P, the witness who had departed the command on emergency leave; finally, that the charges were old, having been preferred in July.

The trial counsel then requested a delay of up to seventy-two hours pursuant to Rule for Courts-Martial [hereinafter cited as RCM] 908(b)(1), Manual for Courts-Martial, United States, 1984 [hereinafter cited as MCM], to determine whether the Government would pursue an interlocutory appeal of the denial of the continuance under Article 62.

Article 62 provides in part:

[T]he United States may appeal an order or ruling of the military judge which terminates the proceedings with respect to a charge or specification or which excludes evidence that is substantial proof of a fact material in the proceeding.

Rule for Courts-Martial 908(b)(1) provides:

*Delay.* After an order or ruling which may be subject to an appeal by the United States, the court-martial may not proceed, except as to matters unaffected by the ruling or order, if the trial counsel requests a delay to determine whether to file notice of appeal under this rule. Tri-

al counsel is entitled to no more than 72 hours under this subsection.

In support of his request for a delay to determine whether to file a notice of appeal, trial counsel argued that the effect of the trial judge's earlier denial of the government's request for a continuance was to deprive the government of its essential witnesses, thus depriving the government of evidence which was substantial proof of material facts. The trial judge denied the request for a delay on the basis that his ruling on the continuance was not "... an order or a ruling by the court which terminates the proceedings with respect to any Charge or Specification or one which excludes evidence in this case." Consequently, in the judge's view, his denial of the requested continuance did not fall within the purview of Article 62 or RCM 908(b)(1). Even though the trial counsel had specifically assured the court that the government was not requesting the delay as a subterfuge, the judge further opined that granting the requested delay under RCM 908 would provide the government with a means to circumvent his earlier denial of their requested continuance.

The judge then required the trial counsel to proceed with trial on the merits. The trial counsel was unable to present any evidence except to ask the judge to consider respondent's written confession which had been admitted into evidence during the earlier Article 39(a) session on 18 October. The parties then rested. After a short argument by the defense counsel, the judge announced findings of not guilty.

Subsequent to adjournment, but prior to his authentication of the record of trial, the trial judge executed a "Memorandum For Appellate Authorities" which he attached to the record as an appellate exhibit. The contents of the memorandum may be divided into three categories. First, major portions of the memorandum are merely summaries of information already part of the verbatim transcript. Second, the memorandum contains certain factual assertions from the trial judge about events connected with his ruling which were within his personal knowledge but which were not mentioned during the trial proceedings or in any exhibit admitted during the trial proceedings. Third, the memorandum contains the rationale the trial judge used in reaching his decision to deny the government's request for a continuance to obtain its witnesses.

The new factual matter asserted by the trial judge is as follows:

A few days prior to 28 November ... I mentioned [to a judge in Mannheim] that I had not heard from [trial counsel] ... and I asked [the judge] to have [trial counsel] contact me about the availability of [the defense] witnesses. About the 26th of November [trial counsel] ... informed me that she had not secured either 1SGT Guiterrez (sic) ... or Sergeant Harper.... I told [trial counsel] that since Sergeant Harper would not be available we could not proceed on the merits on 28–29 November but that I would conduct a 39a session on 29 November on the defense motion to dismiss.... I also told [trial counsel] that I would consider the failure of the government to produce Sergeant Harper as meaning that the government was requesting a continuance to secure the presence of Sergeant Harper. [Trial counsel] told me that the government was not asking for a continuance because the absent witness was a defense witness and the government was ready to proceed with its case on 28 November.... [Trial counsel's] reason for not securing the presence of these two witnesses was that the government was reluctant to disrupt Guiterrez's (sic) pre-retirement processing and reluctant to disrupt Harper's attendance at a military education course....

The rationale expressed by the trial judge for denying the government's request for a continuance to obtain its witnesses was:

I regarded the government's request for a continuance on 5 December as the third request for a continuance in this case. The first occurred when [trial counsel]

failed to secure the presence of the witnesses necessary to dispose of the defense motion to dismiss at a session to be scheduled prior to the trial date of 28–29 November. The second continuance was necessitated by the unilateral decision by the government to not make Sergeant Harper available as a witness on the 28–29 November trial date. Since the government concurred in the trial date of 5–6 December I was not inclined to grant a third continuance under circumstances which I regarded as resulting, in large part, from the government counsel's repeated failure to give adequate attention to the administrative arrangements necessary to secure the presence of both government and defense witnesses at trial.

Other factors which influenced my decision to deny the request for a continuance included the age of the allegations against SFC Browers, the length of time that the charges had been pending, the fact that I had required the defense to stipulate to 1SGT Guiterrez's (sic) expected testimony in order to proceed with the litigation of the defense motion on 29 November, the inconvenience to other witnesses in the case who had to travel from the United States and who would have had to remain in Germany indefinitely or make a second round trip to Germany when [Private P] and [Private M] became available to testify, and the absence of any reliable indication as to when [Private M's] presence could be secured.[1]

The government asserts, without dispute from appellee, that the ruling denying the government's request for a sixteen-day continuance was made at 0830 on 5 December. This is consistent with the authenticated transcript, which shows that the court convened at 0810 on 5 December. At 2300 on 7 December the staff judge advocate for the jurisdiction gave his permission to file a notice of intent to appeal as required by paragraph 13–3, Army Regulation 27–10, Military Justice (15 Mar. 1985). (*See* RCM 908(b)(2)). At 0300 on 8 December, a written notice of intent to appeal, complying with RCM 908(b)(3), was served on the agent of the trial judge.

On 3 January 1985, the government petitioned this Court for an enlargement of time from 4 January until 18 January to file its appeal in this case. The grounds for the requested enlargement were essentially that the preparation of the transcript as required by RCM 908(b)(5) and (6) had taken considerable time and that the transportation of the transcript from the Federal Republic of Germany to government appellate counsel here in the United States had been considerably delayed by Christmas-Hanukkah holiday traffic. After hearing oral argument, we granted the requested enlargement. The government then filed its appeal on 18 January, having first complied with the procedural provisions of Article 62(b), RCM 908(b), and paragraph 13–3, Army Regulation 27–10.

On 23 January, appellee filed a motion for summary dismissal of the government's appeal, contending that review was clearly foreclosed by the Double Jeopardy Clause of the United States Constitution. We denied the motion, deeming it necessary to consider the briefs and arguments of the parties on that as well as the other issues presented by this case before reaching our decision. Appellee then filed his reply brief on 11 February and we heard oral argument on the merits of the issues on 12 February 1985. Having afforded this matter all practicable priority over the other matters pending before us as required by Article 62(b), and having attempted to strike the proper balance between speed

---

1. The government objects to inclusion of the memorandum in the record and to our consideration of its contents. Appellee contends that the memorandum is properly in the record and urges us to consider its contents. The cumulative portion is mere surplusage. Statements by trial judges of the rationale for their rulings are to be encouraged. The new factual matter presents complex and difficult issues (*e.g., see* Military Rule of Evidence 104 and *United States v. Conley,* 4 M.J. 327 (C.M.A.1978)) which we need not decide since it is only the government which objects thereto and we do not regard this material as harmful to the government's cause.

and thoroughness, we now announce our decision.

## II. *The Issues*

We are confronted with three basic issues, which we will address in the following order:

(a) Is the trial judge's denial of the government's request for a continuance in order to produce its missing witnesses appealable under the terms of Article 62 and RCM 908?

(b) If so, did the trial judge err in denying the continuance?

(c) If so, does the Double Jeopardy Clause bar further proceedings against appellee?

Succintly stated, appellee's answers to the above questions are "No", "No" and "Yes", respectively. The government contends that the military judge improperly interfered with its right to appeal pursuant to Article 62 by denying trial counsel's request for a delay to determine whether to prosecute an appeal under Article 62; that the military judge improperly obliged the trial counsel to proceed with a trial on the merits; and finally, that the military judge erred by denying the continuance.

## III. *Appealability Under Article 62*

■ This case presents issues of first impression before this Court concerning the scope of the government's right to appeal under Article 62. The legislative history of Article 62 reveals that Congress intended that article to parallel, to the extent practicable, 18 U.S.C. § 3731 (1984),[2] which permits appeals by the United States in federal civilian prosecutions. *See* S.Rep.

No. 98–53, 98th Congress, 1st Sess. 23 (Military Justice Act of 1983) (statement of William Taft IV, General Counsel of the Dept. of Defense); The Military Justice Act of 1980: Hearings on S. 2521 Before the Subcomm. on Manpower and Personnel of the Senate Comm. on Armed Services, 97th Cong., 2d Sess. 33, 46 (1982) (statement of Major General Hugh J. Clausen, The Judge Advocate General, U.S. Army). There is a significant body of case law from the Article III courts which has interpreted and applied 18 U.S.C. § 3731. Because Article 62 was intended to parallel that statute, we look to those cases for guidance in analyzing the appealability issue.[3]

The legislative history of 18 U.S.C. § 3731 reflects that "Congress intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit." *United States v. Humphries,* 636 F.2d 1172, 1175 (9th Cir.1980) (citations omitted), *cert. denied,* 451 U.S. 988, 101 S.Ct. 2324, 68 L.Ed.2d 846 (1981); *see also United States v. Hetrick,* 644 F.2d 752, 755 (9th Cir.1980); *United States v. Robinson,* 593 F.2d 573 (4th Cir.1979). Pursuing this basic approach, the government urges us to follow the Article III courts, which have broadly construed the scope of 18 U.S.C. § 3731 by utilizing an "effects" test. This test focuses on the effect of a court order, rather than its facial categorization or its title. *United States v. Margiotta,* 662 F.2d 131 (2d Cir.1981), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983); *United States v. Humphries,* 636 F.2d at 1175. In contrast, appellee argues that

---

**2.** 18 U.S.C. § 3731 (1984) reads in pertinent part:

In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized prop-

erty in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

＊　　＊　　＊　　＊　　＊　　＊

The provisions of this section shall be liberally construed to effectuate its purposes.

**3.** *Accord, United States v. Scholz,* 19 M.J. 837 (N.M.C.M.R.1984).

appeals under Article 62 should be restricted to rulings which explicitly terminate the proceedings or which explicitly suppress or exclude evidence.

Appellee argues that adoption of the effects test will produce chaos in courts-martial by subjecting nearly every evidentiary ruling and many other routine rulings to the possibility of an interlocutory appeal with the attendant interruption and delay of the criminal justice process. Appellee next argues that Congress could not have intended such wholesale government appeals and that therefore Congress must have intended a strict and literal interpretation of the appealability clause of Article 62 rather than the broad effects test. The short answer is that there is every reason to believe that appellee's prediction of an avalanche of interlocutory appeals as a result of the admittedly broad scope of the effects test simply will not come true. First, the government has a strong interest in expediting the disposition of cases; the overwhelming majority of court-martial jurisdictions are busy ones, staffed by busy prosecutors who are° supervised by busy staff judge advocates.[4] Second, prosecutors will be reluctant to alienate trial judges by disrupting their dockets for the interlocutory appeal of rulings which are obviously not crucial to the outcome of a case. Finally, and perhaps most persuasively, during the fourteen years in which 18 U.S.C. § 3731 has been in effect in its present broad form, the reported cases involving its use in the Article III courts average less than one case in each district every two years; the military experience cannot be expected to be substantially different.

■ We decline to adopt appellee's jurisdictional approach because we believe that it is overly technical and fails to accurately reflect the intent of Congress in enacting Article 62. Instead, we follow the example of the Article III courts' interpretation of 18 U.S.C. § 3731 and adopt the effects test. Applying the effects test to the case at bar, we hold that the trial judge's ruling had the

effect of excluding evidence which was substantial proof of a material fact. We therefore answer the first issue in the affirmative.

## IV. *Denial of the Continuance*

■ As a general rule, "[t]he decision whether to continue a trial to enable a party to procure an absent witness rests within the sound discretion of the trial court and will not be disturbed on appeal absent a clear showing that such discretion has been misused." *United States v. Charnay,* 577 F.2d 81 (9th Cir.1978) (citations omitted). This principle is fully applicable in the military. *See United States v. Knudson,* 16 C.M.R. 161 (C.M.A.1954); RCM 906(b)(1). Continuances for the production of material witnesses are looked upon with favor, however, and the exercise of sound discretion requires that they be granted upon a showing of reasonable cause. *United States v. Daniels,* 28 C.M.R. 276, 279 (C.M.A.1959); RCM 906(b)(1), Discussion, MCM, 1984. The government, representing society at large, has a strong interest in prosecuting an accused on a valid charge which is supported by a prepared trial counsel with all essential witnesses available to testify. *See United States v. Correia,* 531 F.2d 1095, 1098 (1st Cir.1976). As a result, "[u]nexpected delays in a trial date must be accepted on some occasions...." in order that justice may be accomplished. *United States v. Charnay,* 577 F.2d at 81.

■ In order to guard against bad faith and unwarranted delays, the military judge must consider many factors before ruling on a request for continuance for purposes of securing a witness. These factors include whether the expected testimony is material and noncumulative; whether the testimony is of sufficient weight that it will probably affect the result; whether the testimony can be obtained; and finally, whether the moving party exercised due diligence to secure the attendance of the absent witness. *United States v. Perry,*

---

**4.** *Accord id.* at 840.

34 C.M.R. 761, 765–766 (A.F.B.R.1963) (citations omitted).

■ In this case, the expected testimony of both absent witnesses was obviously regarded by the trial judge and counsel as material, noncumulative, and of crucial weight. We disagree with the trial judge as to the application of the remaining criteria. Private P, the witness on emergency leave, was obviously going to be available to testify. Whether Private M, the AWOL witness, was obtainable is therefore moot.[5] The inability of the government to call the two witnesses was occasioned by circumstances outside the government's control, a family emergency and an absence without leave. The other matters considered by the trial judge in this connection were irrelevant to the continuance in question. Whatever failings the trial counsel had otherwise exhibited bore no relationship to the absence of the witnesses in question. The government demonstrated due diligence with respect to the production of Privates P and M. Based on all of the above, we are satisfied that the government demonstrated good faith and that the requested delay was warranted.

■ However, good faith and due diligence on the part of the government are not necessarily outcome-determinative. It is also necessary to evaluate the effect of the continuance on the party opposing. Appellee's argument at trial that further delay would hurt his morale and duty performance, and thereby impair his ability to obtain character witnesses, is not persuasive. Appellee's duty performance, and to a large extent his morale as well, were under his control rather than the government's. Absent a showing of particular hardship on the accused, the interests of society are sufficiently weighty to require that the government be allowed to present its case in chief at the cost of some inconvenience to the court's docket and the accused. *See United States v. Clinger*, 681 F.2d 221, 223 (4th Cir.1982), *cert. denied*, 459 U.S. 912, 103 S.Ct. 221, 74 L.Ed.2d 176 (1982); *United States v. Knudson*, 16 C.M.R. at 170; *see also United States v. Dunks*, 1 M.J. 254 (C.M.A.1976).

The government's ability to obtain a continuance for purposes of securing an essential witness is entitled to as much consideration as that of an accused. *See* Article 40, UCMJ, 10 U.S.C. § 840. Both the government and the accused are entitled to their full day in court. *United States v. Hamil*, 34 C.M.R. 533, 543 (A.B.R.1963). Were the roles of the parties reversed, and the accused the party seeking the continuance in order to obtain a witness or witnesses whose testimony was crucial to establish the accused's innocence, the judge's denial of such a request under the circumstances presented in this case would clearly be an abuse of discretion. *See United States v. Menoken*, 14 M.J. 10 (C.M.A.1982); *United States v. Lucas*, 5 M.J. 167, 172–173 (C.M.A.1978). We hold that the military judge abused his discretion by denying the government's request for this continuance. We therefore answer the second issue in the affirmative.[6]

## V. *Double Jeopardy*

Despite our determinations that we have been presented with a reviewable issue un-

---

5. Article 62(b) confines us to questions of law only. It may be arguable that the question whether the AWOL witness was obtainable is a question of fact which we may not decide, in light of the trial judge's observation that he saw no reason to believe that witness would be available in the foreseeable future. While it could also be argued that this conclusion is wholly without evidentiary basis in the record, and therefore erroneous as a matter of law, we need not decide this narrow issue and therefore in the interests of judicial economy and prompt disposition will not decide it here.

6. This is not to suggest, however, that the government has the power to set its own docket by requesting a continuance. Absent a showing of good faith and due diligence in securing both its witnesses and those requested by the defense, or upon a showing of particular hardship occasioned by the delay which is sufficient to outweigh the moving party's interest, the military judge may properly deny a request for continuance and proceed as appropriate. *See, e.g., United States v. Correia*, 531 F.2d 1095, 1099 (1st Cir.1976). The trial counsel may then interrupt the proceedings only by invoking RCM 908.

der Article 62 and that the trial judge abused his discretion by denying the government's request for a continuance to obtain its witnesses, we may not, of course, engage in or authorize additional proceedings against appellee if doing so would violate the Double Jeopardy Clause of the United States Constitution:

> Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb.

or Article 44, UCMJ, 10 U.S.C. § 844.[7] Article 44 mirrors the Double Jeopardy Clause in all respects pertinent to the case at bar. *United States v. Cook*, 12 M.J. 448, 452 (C.M.A.1982); *United States v. Stringer*, 17 C.M.R. 122 (C.M.A.1954); S.Rep. No. 486, 81st Cong., 1st Sess. 20 (1949).

## A. Effect of an Acquittal

■ The Double Jeopardy Clause absolutely bars appeal or retrial after an acquittal or an action which amounts to an acquittal.[8] *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978), and cases cited therein. Perhaps the most vivid illustration of this principle is found in *Fong Foo v. United States*, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962). There the trial judge in a United States District Court had directed a judgment of acquittal in favor of the defendant under circumstances which strongly suggested that the directed verdict was based on two patently erroneous determinations: first, that the prosecutor had acted improperly by communicating with his own witness during a recess; and second, that a directed judgment of acquittal was a permissible remedy for such supposed misconduct. The Court of Appeals granted a government appeal and authorized a retrial, essentially relying on the fact that the trial judge had clearly exceeded his authority by directing an acquittal. *In re United States*, 286 F.2d 556 (1st Cir. 1961), *rev'd sub nom, Fong Foo v. United States*, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629.

The Supreme Court held:

> The petitioners were tried under a valid indictment in a federal court which had jurisdiction over them and over the subject matter. The trial did not terminate prior to the entry of judgment, as in *Gori v. United States*, 367 U.S. 364 [81 S.Ct. 1523, 6 L.Ed.2d 901 (1961)]. It terminated with the entry of a final judgment of acquittal as to each petitioner. The Court of Appeals thought, not without reason, that the acquittal was based upon an egregiously erroneous foundation. Nevertheless, "[t]he verdict of acquittal was final, and could not be reviewed ... without putting [the petitioners] twice in jeopardy, and thereby violating the Constitution." *United States v. Ball*, 163 U.S. 662, 671 [16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896)].

369 U.S. at 143, 82 S.Ct. at 672.

■ Thus, no matter how erroneous the trial judge's ruling in the case at bar may have been, further review or trial is precluded if appellee was acquitted.

---

7. Article 44, UCMJ, reads in pertinent part:
   (a) No person may, without his consent, be tried a second time for the same offense.
   (b) No proceeding in which an accused has been found guilty by court-martial upon any charge or specification is a trial in the sense of this article until the finding of guilty has become final after review of the case has been fully completed.
   (c) A proceeding which, after the introduction of evidence but before a finding, is dismissed or terminated by the convening authority or on motion of the prosecution for failure of available evidence or witnesses without any fault of the accused is a trial in the sense of this article.

8. Note that Article 62(a)(1) provides that, "the United States may not appeal an order or ruling that is, or that amounts to, a finding of not guilty with respect to the charge or specification." This language incorporates the double jeopardy principle that an acquittal is not reviewable. Whether this aspect of the case is treated as a constitutional question or as a question of the applicability of Article 62, the result will be the same. For simplicity's sake, then, we will address this matter from the constitutional perspective with a mental note that the same results will follow from the quoted portion of Article 62.

### B. Effect of Attachment of Jeopardy

■ Of course, an acquittal need not take place in order for the Double Jeopardy Clause to apply. When a first trial has terminated after jeopardy has attached but before a verdict has been reached, further proceedings against the accused may or may not be barred by the Double Jeopardy Clause, depending on whether the first trial was terminated for an acceptable reason (often termed "manifest necessity" or "imperious necessity").[9] *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), is a case in which the first trial was terminated after jeopardy had attached but prior to verdict. There the Supreme Court adopted the proposition that the absence of government witnesses might, under some circumstances, justify a second trial following termination of a first trial in which jeopardy had attached, holding that "[e]ach case must turn on its facts." 372 U.S. at 737, 83 S.Ct. at 1035. The Court then went on to decide that the particular facts in *Downum* did not constitute acceptable reasons for termination of the first trial (rather than a continuance) and that therefore a second trial was prohibited. Whether we must make a similar determination in the case at bar depends on whether jeopardy has attached and on whether the trial has been terminated, since obviously the Double Jeopardy Clause is no bar to further proceedings where jeopardy has yet to attach for the first time or where a trial has merely been interrupted. (The latter principle is, after all, the basic premise on which 18 U.S.C. § 3731 and Article 62 depend.)

### C. Request for Delay Under RCM 908

■ In deciding whether appellee was acquitted, whether jeopardy has attached in the case at bar and whether the trial in the case at bar has been terminated or merely interrupted, we hold first that a trial counsel's request for a delay to determine whether to file notice of appeal automatically interrupts the proceedings of a court-martial for a period of up to 72 hours. (RCM 908(b)(1)). (The trial counsel may trigger a shorter interruption by requesting a shorter delay, of course, and may waive the remainder of any interruption triggered by his request for delay.) If written notice of appeal is provided to the military judge within 72 hours of a contested ruling or order, a further automatic interruption of the court-martial proceedings occurs as to all charges and specifications affected by the contested ruling or order. (RCM 908(b)(3)). All putative proceedings in the trial forum during such an interruption are a nullity as to any charge or specification affected by the contested ruling or order. That is what happened in the case at bar. Once the trial counsel requested a delay under Rule 908, the trial judge had no power to determine whether the trial should proceed or not; the trial had been interrupted by operation of law.

We base this holding on the plain language of Rule for Courts-Martial 908:

(b)(1) *Delay* . . . . the court-martial may not proceed . . . if the trial counsel requests a delay . . . .

(b)(4) *Effect on the court-martial.* Upon written notice [of appeal], no session of the court-martial may proceed . . . .

and also on the implication of subsection (b)(1):

*Delay.* After an order or ruling which *may be* subject to an appeal by the United States . . . . (emphasis added).

Again, appellee argues that such a rule would bring about results so dire that Congress must have intended otherwise. On this point appellee argues that trials will be hampered by repetitive delays based on absurd grounds; suggests (as did the trial judge in the case at bar) that "unfettered discretion" in the prosecutor to halt the proceedings is inconceivable in the face of

---

**9.** This principle appears to have been first recognized in *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). *See generally*, J. Cook, *Constitutional Rights of the Accused—* Post-Trial Rights § 55 *et seq.*, Lawyers Cooperative Publishing Co. 1976; R. McNamara, *Constitutional Limitations on Criminal Procedure*, § 15.17, McGraw-Hill Book Company (1982).

the traditional allotment of authority in favor of the trial judge; and implies that trial counsel will act in bad faith in employing such power.

■ While trial judges as a group, because of their greater experience and neutral position, are likely to make fewer mistakes in judgment than either defense counsel or trial counsel as a group, this does not mean that either defense counsel or trial counsel should be expected to behave unprofessionally. The military justice system, like its civilian counterpart, necessarily operates on the presumption that counsel perform their functions with good judgment and in good faith. Experience has demonstrated that that presumption is well founded in the vast majority of cases. Even in the event that a trial counsel succumbs to temptation, we are confident that his superiors, who must review and approve further action on a government appeal, will quickly restore the situation and, if necessary, remove the offender as well. In addition, the military justice system has well-developed procedures for bringing professional sanctions to bear for unprofessional conduct.[10]

The opposite interpretation, that RCM 908 contemplates an exercise of discretion by a trial judge to determine whether to interrupt a trial to allow prosecution of a government appeal, requires the acceptance of two propositions which we find untenable. First, the conspicuous absence of any reference in RCM 908 to a requirement for the trial judge's approval of a government appeal, and the equally conspicuous absence of any reference to the criteria which would be applied, would have to be attributed to an oversight by the drafters. This is highly unlikely in light of the intricate procedural scheme presented

by the interlocking provisions of Article 62 and RCM 908. Second, we would have to be persuaded that the President intended to create a major limitation on government appeals in the face of testimony before Congress by senior Executive Branch officials that Article 62 should parallel 18 U.S.C. § 3731. This is highly unlikely in light of the fact that 18 U.S.C. § 3731 was clearly enacted "to allow [government] appeals whenever the Constitution would permit."

We are satisfied that the President chose to rely on the systemic protections noted above rather than placing the matter in the hands of the trial judge, and thus, that RCM 908 means what it says.

### D. When Jeopardy Attaches

■ Second, we hold that in a nonjury trial, jeopardy attaches only when the proceedings have reached the point at which the defendant is "put to trial before the trier of facts," which means "when the court begins to hear evidence." *Serfass v. United States*, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975); *see generally*, Annot., 49 A.L.R.3d 1039 (1973).[11] The Court of Military Appeals has adopted this rule in interpreting Article 44, UCMJ. *United States v. Cook*, 12 M.J. at 452–453; *United States v. Kelly*, 15 M.J. 1024, 1027 (A.C.M. R.1983). This rule was applied in *United .States v. Choate*, 527 F.2d 748 (9th Cir. 1975), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976), which we regard as controlling the situation confronting us. In *Choate*, the district court, during a nonjury trial, accepted two stipulations of fact and then granted a motion to dismiss the indictment because of governmental misconduct. The Court of Appeals held that accepting the stipulations at a

---

**10.** We find RCM 908 somewhat analogous to the emergency brake on a railroad train. When the cord is pulled, the train immediately stops without debate over whether there is sufficient danger to justify the delay or whether the cord was pulled in good faith. The railroad relies on two things to avoid unnecessary emergency stops: a responsible attitude on the part of the passengers and the threat that persons who abuse the privilege may be ejected from the train.

**11.** In a jury trial, jeopardy attaches when the jury is sworn. *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *see United States v. Cook*, 12 M.J. at 452–453; *see also*, J. Weise, Double Jeopardy: Changes by the Supreme Court and Their Effect on the Military, 11 The Advocate 28 (Jan.—Feb. 1979).

hearing at which trial on the merits was not contemplated did not constitute "hearing the evidence" in the sense of beginning the trial for jeopardy purposes.[12] The same is true of the admission of appellee's statement at the 18 October hearing.

### E. Summary

We hold that the purported trial and acquittal of appellee was a nullity, that appellee's trial was interrupted rather than terminated and that jeopardy did not attach at the hearing on 18 October when appellee's statement was admitted.[13] We therefore answer the third issue in the negative.

### VI. *Decree*

The ruling of the trial judge denying the government's request for a continuance is reversed. The proceedings held subsequent to the trial counsel's request for a delay under RCM 908(b)(1) are declared a nullity. The case is remanded to the trial court for further proceedings not inconsistent with this opinion. The court-martial may proceed as to the affected charge and specifications pending further review (if any) by the United States Court of Military Appeals or the United States Supreme Court unless either Court orders the proceedings stayed.

Judge FELDER and Judge NAUGHTON concur.

---

**12.** *Compare United States v. Finch*, 548 F.2d 822 (9th Cir.1976).

**13.** Since the trial was automatically interrupted by trial counsel's request for a delay under RCM 908(b)(1), and this happened prior to the time when the trial on the merits would have begun by the court beginning to "hear" evidence on the merits, jeopardy has yet to attach in appellee's case. On the other hand, had no such *automatic* interruption taken place, the subsequent purported acquittal would have existed in the eyes of the law and would have barred further review or trial. The nullity of the proceedings during the interruption triggered by the trial counsel's request would have expunged any verdict of guilty the court might have reached during that period just as it did the purported acquittal. The absence of any possibility of a legally cognizable conviction underscores the absence of jeopardy in this case.