**UNITED STATES, Appellee,**

v.

**George F. MENOKEN, Private, U. S. Army, Appellant.**

No. 40893.

SPCM 15412.

U. S. Court of Military Appeals.

Aug. 30, 1982.

For Appellant: *Captain Edward J. Walinsky* (argued); *Colonel Edward S. Adamkewicz, Jr., Major Charles A. Byler* (on brief); *Captain David M. England.*

For Appellee: *Captain Rexford T. Bragaw, III* (argued); *Colonel R. R. Boller, Major John T. Edwards* (on brief); *Major Ted B. Borek, Captain Eugene R. Milhizer.*

OPINION OF THE COURT

COOK, Judge:

Tried by special court-martial, military judge alone, on July 18, 1980, the accused was convicted, despite his pleas, of absence without leave from August 16, 1979, to May 17, 1980, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886.[1] The adjudged and approved sentence extends to a bad-conduct discharge, confinement at hard labor for 6 months, forfeiture of $299 pay per month for 6 months and reduction to Private E–1. The United States Army Court of Military Review affirmed in a short-form opinion.

Although this case was submitted on the merits, we granted review of the following specified issue:

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY DENYING THE DEFENSE REQUEST FOR A CONTINUANCE.

At trial the accused testified that while he was at home on excess leave,[2] he received a letter directing him "to report to Fort Dix, A Company, PCF" (Personnel Control Facility). The accused testified that upon reporting in, he was informed by

---

1. An additional specification alleging absence without leave from February 16, 1978, until August 7, 1979, was dismissed by the military judge as barred by the provisions of Article 43, Uniform Code of Military Justice, 10 U.S.C. § 843 (Statute of Limitations).

2. The accused had been convicted earlier by general court-martial, but the conviction was reversed and set aside by this Court for failure of the military judge to make a complete inquiry into the terms and conditions of the pretrial agreement. *United States v. Menoken,* 4 M.J. 219 (C.M.A.1978).

the platoon sergeant (Tressa) that he was "on excess leave." Later on August 16 the accused went back to Sergeant Tressa and "said I had slight problems at home and I'd like to get some leave." Sergeant Tressa purportedly responded, "As far as I know, you're still on indefinite leave because I don't have nothing on you." Accused believed that he could go home "until . . . [he] could take care of . . . [his] problems" and left. Subsequently, in May 1980 the accused was stopped by civilian police for a traffic violation and, upon being taken to the station, was told that he was absent without leave.

In rebuttal the Government called two sergeants who were assigned to Company A, PCF, during the period in question who testified that Sergeant Tressa was not assigned to Company A between August 9 and 16, 1979.[3] At the conclusion of their testimony, defense counsel moved for a continuance "until the Defense could establish possibly whether or not Sergeant Tressa was there. It's our belief, from speaking to Sergeant Tressa, that he was there during the time period involved." Trial counsel responded:

> [T]he Government would oppose the continuance on the grounds that the Defense is not surprised by the evidence. They knew in advance that they were going to elicit this evidence on Sergeant Tressa, and yet, they did not call Sergeant Tressa as a witness or request the Government to call Sergeant Tressa as a witness. At the very least, the Government would request that the court require a showing of—or an offer of proof from the Defense as to what Sergeant Tressa would testify if he did come—. . . beyond the fact that he was—he claims that he was in PCF at the time the Defense states that he was in PCF.

Before ruling on the motion, the military judge determined that defense counsel had been representing the accused since July 3, 1980, and that defense counsel had spoken to Sergeant Tressa on the telephone two days prior to trial. Without more the military judge denied the motion for continuance.[4]

■ For reasonable cause the military judge may grant a continuance to any party at any time and as often as may appear just. Article 40, UCMJ, 10 U.S.C. § 840. However, the decision of whether a continuance should be granted rests within the sound discretion of the military judge and will not be overturned except for clear abuse of that discretion. *United States v. Thomson*, 3 M.J. 271 (C.M.A.1977); *United States v. Dunks*, 1 M.J. 254 (C.M.A.1976); *Conmy v. United States*, 20 U.S.C.M.A. 282, 43 C.M.R. 122 (1971); *United States v. Knudson*, 4 U.S.C.M.A. 587, 16 C.M.R. 161 (1954).

■ Appellate defense counsel interpret the specified issue as "involving a denial of witnesses." However, we believe that such a connotation is misplaced in view of the facts of this case. Defense counsel requested a continuance "until the Defense could establish possibly whether or not Sergeant Tressa was there." That fact, even if it were proven, is only collateral to the prime contention of the defense that Sergeant Tressa gave the accused permission to leave and would go, in actuality, only to controvert the Government's rebuttal evidence that he was not there at the time specified by the accused. Had defense counsel possessed any information that Sergeant Tressa would testify that he did give the ac-

---

**3.** Staff Sergeant Timmerman testified that he arrived at Company A, PCF, on June 21, 1979. Sergeant Timmerman "knew Sergeant Tressa before" and he had been told that "Sergeant Tressa had left just prior to my coming at that time."

**4.** In response to a request by this Court during oral argument, appellate government counsel filed copies of Senior Enlisted Evaluation Reports pertaining to Sergeant Tressa which indi-

cated that he was evaluated for his performance at Fort Dix for the period May 1978 to April 1979, and for his performance in Korea for the periods May 1979 to August 1979 and September 1979 to August 1980. On the basis of these official Army personnel records we may conclude that Sergeant Tressa departed Fort Dix sometime between April 1979 and May 1979 for reassignment to Korea.

cused permission to leave, it was his obligation to make an offer of proof at trial so as to properly inform the military judge of the ramifications of the defense motion. Para. 58f (C 3), Manual for Courts-Martial, United States, 1969 (Revised edition); *compare United States v. Jefferson,* 13 M.J. 1 (C.M.A.1982), *with United States v. Bennett,* 12 M.J. 463 (C.M.A.1982). Here there was "not even a legitimate averment" by defense counsel that the witness would support the accused's story sufficient "to put the military judge on notice." *United States v. Lucas,* 5 M.J. 167, 172 (C.M.A. 1978) (footnote omitted). Even construing defense counsel's statement as broadly as possible, he only averred the *possibility* that he could establish that Sergeant Tressa was actually at the PCF at the time to which the accused testified.[5] This is hardly sufficient to raise the issue of denial of an essential witness. *United States v. Lucas,*

*United States v. Bennett, United States v. Jefferson,* all *supra.*

Considering that the defense counsel had spoken to Sergeant Tressa two days before trial; that no request for his presence at trial or any offer as to his expected testimony, had been or was made; and that the testimony of the government witnesses that Sergeant Tressa was not present at the PCF during the critical time,[6] we conclude that the military judge did not abuse his discretion in denying the motion for continuance. *United States v. Thomson, United States v. Jefferson, United States v. Lucas,* all *supra.*

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge FLETCHER concur.

---

**5.** Our examination of the entire record indicates that the accused may have been mistaken as to the date he allegedly talked to Sergeant Tressa. When his earlier conviction was reversed by this Court on January 9, 1978, he was on excess leave. It may be assumed that he was notified of this action and that his excess leave was terminated. He could have reported to the PCF after that time and prior to the inception date of his first absence without

leave (February 16, 1978). Sergeant Tressa was assigned to Company A, PCF, until May 1978. While we have no way to determine the credibility of the accused's story, he might have encountered Sergeant Tressa at that time.

**6.** Our conclusion is bolstered by the evaluation reports showing the dates and places of Sergeant Tressa's assignment. *See* n. 4, *supra.*