**UNITED STATES, Appellee,**

v.

**Staff Sergeant Frederick W. THOMAS, Sr., 453–06–4785, United States Army, Appellant.**

**ACMR 9001225.**

U.S. Army Court of Military Review.

19 Aug. 1991.

As Amended 10 Sept. 1991.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Captain Alan M. Boyd, JAGC, Captain Michael W. Meier, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Maria C. Fernandez, JAGC, Captain Marcus A. Brinks, JAGC, Captain Joel J. Berner, JAGC (on brief).

Before JOHNSON, WERNER and GRAVELLE, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Judge:

Before a general court-martial, the appellant pleaded guilty to committing indecent acts with his minor stepdaughter, indecent assault, and adultery, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1982) [hereinafter UCMJ]. A court composed of members sentenced him to a dishonorable discharge, confinement for six years, partial forfeitures for a like period, and reduction in grade to Private E1. The convening authority, pursuant to a pretrial agreement, approved the dishonorable discharge, confinement for three years, forfeiture of $482.00 per month for three years, and reduction to Private E1.

The appellant assigned, *inter alia*, the following error:

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY FAILING TO GRANT A CONTINUANCE TO ALLOW APPELLANT TIME TO OBTAIN AN EXPERT WITNESS AND TO EFFECTIVELY PREPARE HIS DEFENSE.

We also specified:

WHETHER THE MILITARY JUDGE ERRED IN FINDING, AS A MATTER OF FACT, THAT APPELLANT'S RELEASE OF CPT WALKER AS DETAILED DEFENSE COUNSEL WAS VOLUNTARY.

We hold that the judge abused his discretion as alleged and find that he erred in denying the appellant his counsel rights.

I.

During his arraignment at a pretrial session at Fort Sam Houston, San Antonio, Texas, on 13 March 1990, the appellant indicated to the military judge (Judge Mitchell) that he desired to be represented by his detailed military counsel (Captain Walker) and his civilian counsel (Mr. Wheeler). Captain Walker was assigned to the Army Trial Defense Service office located at Fort Sam Houston; Mr. Wheeler was also from the San Antonio area. However, Captain Walker informed the judge that the appellant had requested in writing that he wished to be represented by individual military counsel. He anticipated that the request would be granted before the next session of trial and that the counsel would likely come from the Trial Defense Service office located at Fort Hood, Killeen, Texas. The distance between Fort Hood and Fort Sam Houston is about 150 miles. Mr. Wheeler also informed the judge that he was not prepared for trial and moved to continue the trial until 11 April. The government did not object and Judge Mitchell granted the defense motion.

A second pretrial session was held at Fort Hood on 5 April 1990, before Judge

Hewitt. This hearing was called by Mr. Wheeler in order to request a continuance until the end of April. In support of his request, he advised the judge that since being retained by the appellant in late February, he had acquired a large number of cases and had numerous court appearances scheduled that prevented him from adequately preparing for trial. He was concerned about his inability to interview essential witnesses who could testify on appellant's behalf. He also indicated that he had not had the assistance of a military counsel familiar with the case because Captain Walker had been reassigned and his individually selected replacement, Captain Walters, who was stationed at Fort Hood, was unfamiliar with the case. Finally, he needed more time to obtain a psychiatric evaluation from a Doctor Croft, a psychiatrist practicing in San Antonio. Mr. Wheeler also advised the judge that the appellant had waived the pretrial investigation required by Article 32, UCMJ, and intended to plead guilty. The record reflects that pretrial restraint had not been imposed upon the appellant.

The military judge did not inquire of the trial counsel whether the government opposed the defense motion. Instead, he interrupted Mr. Wheeler before he could fully explain the factual basis for his motion. Then he deferred ruling on the defense's motion for the continuance and directed the following:

> [O]n the 11th of April, you be as prepared as you possibly can be on that particular day. At that particular time, we will conduct a providence inquiry ... we'll get the pleas, the providence inquiry, make findings, if we can, on that particular day, and then move into the sentencing phase of the trial. At such time, at least, the government can present their evidence in sentencing. I would also prefer that the defense be prepared at that time to present its evidence. If you cannot present your evidence, if you need a delay, then we will take a delay at that time, but I will tell you that I will continue the case on the 14th, but no longer than the 14th.

Mr. Wheeler requested reconsideration of this ruling and provided the judge with a more detailed explanation of why the defense needed the continuance. He explained that Doctor Croft was a psychiatrist who specialized in treating sex offenders and had examined the appellant on 2 April, but needed three weeks to complete his evaluation report. Mr. Wheeler further explained that the appellant's military counsel, located at Fort Hood, was unable to assist him because of his caseload and logistical difficulties. However, the judge denied his request, implying that the defense had been tardy in contacting Doctor Croft and opining that it was an "eleventh hour preparation." After a brief recess during which he consulted with the appellant, Mr. Wheeler advised the judge that the appellant had released him from the case. He explained that, in view of the judge's denial of a continuance, he did not believe he could adequately represent the appellant in the time allowed him to prepare for trial.[1] The judge permitted the appellant to discharge Mr. Wheeler.

Captain Walters also advised the judge that the appellant wanted to release him "if another military counsel could be detailed." The judge conducted an inquiry into the appellant's understanding of his right to counsel and his earlier request to be represented by Captain Walters. During this inquiry, the appellant told the judge that he had not wanted to discharge Captain Walker or to request Captain Walters. He implied that he was compelled to make that election because Captain Walker was about to be reassigned and would be unavailable to represent him. The judge, noting that a release of Captain Walters would "really put a stress upon whoever represents him to be prepared for trial on the 11th," denied appellant's request to discharge Captain Walters.

---

1. Mr. Wheeler advised the judge that his records indicated that he had made twenty-six court appearances between 26 February and 5 April that included numerous criminal cases and several divorce and traffic cases.

The next pretrial session took place on the morning of 19 April at Fort Sam Houston, Judge Hewitt again presiding.[2] The appellant advised the judge that he had retained another civilian defense counsel, Mr. Alexander, who was not present in court. He also reiterated his request for Captain Walker. In response to questions from the judge, the appellant acknowledged discharging Captain Walker and individually requesting Captain Walters during the first session before Judge Mitchell. However, he maintained he did this "because I was under the impression given to me by CPT Walker that he was PCSing to some school. And I was left with the impression that I had no choice but to release him because he was PCSing."[3] When asked why he wanted Captain Walker to represent him in addition to Mr. Wheeler, the appellant replied:

Because CPT Walker, for one, was here on post and he was in the system. And the fact that he told me I could have both the military counsel and a civilian counsel—he would work with the civilian counsel. And to me, it didn't make any sense not to use both of them if I could use them.

Notwithstanding the appellant's testimony and the absence of any contradictory evidence from the government, the military judge found that the appellant's decision to discharge Captain Walker and request Captain Walters was knowingly, voluntarily, and intelligently made. He denied the appellant's request for Captain Walker and ordered the trial to proceed later that day.

When the court reconvened that afternoon, the military judge noted that Mr. Alexander was again absent but proceeded with the trial with appellant represented by Captain Walters. As the judge began the

providence inquiry, Mr. Alexander suddenly arrived at the courtroom. Mr. Alexander informed the judge that he had been trying a case in a local civilian court and was unable to appear at the court-martial earlier. He stated that his appearance would be brief as he had to return to civilian court. He told the judge that although he had been retained by the appellant on 6 April, he had been unable to prepare fully for trial because of his caseload. He moved for a sixty-day continuance, focusing on the defense's need for the expert testimony of Doctor Croft whom he wanted as both an expert witness and as an "expert assistant" for the defense. He asked that Doctor Croft be hired at the government's expense. He also reasserted the appellant's request to be represented by Captain Walker. The judge took both motions under advisement as Mr. Alexander was about to depart the courtroom to attend the civilian proceeding. He stated he would decide them if Mr. Alexander returned later that day.

In Mr. Alexander's absence, the judge inquired into the providence of the appellant's pleas, found them to be providently entered, and accepted them. The record reflects the judge requested and obtained the assent of Mr. Alexander and the appellant prior to conducting the providence inquiry in this manner.

After accepting the appellant's pleas, the judge noted that Mr. Alexander had not returned to the court-martial. He asked the appellant if he objected to impaneling the court members without Mr. Alexander. Neither the appellant nor his military counsel, Captain Walters, objected to this action and a substantial portion of the *voir dire* of court members was completed before Mr. Alexander returned to court.[4] When

---

2. Judge Hewitt noted that after the 5 April session, he had been "inundated with [telephone] calls from the Regional Defense Counsel and others." He granted a continuance until 19 April. His apparent reason was "the fact that [the appellant] had dismissed Mr. Wheeler from his case, that left CPT Walters to be his sole counsel. And CPT Walters, anticipating his release at that particular session, was not prepared to proceed."

3. The military acronym "PCS" stands for "Permanent Change of Station" and refers to a permanent reassignment from one duty station to another.

4. The record indicates that Mr. Alexander was present in the courtroom during the last third of the *uvoir dire*. He examined only one of the court members, contested the trial counsel's peremptory challenge of one of the members, and asserted challenges on behalf of his client.

Mr. Alexander reappeared at trial, he likewise did not object to the procedure.

The judge denied the appellant's motion requesting the assistance of Doctor Croft. His reasons for the ruling are as follows:

Number one, there was not a timely and proper request directed to the proper official for "the Army hiring Dr. Croft to assist in the preparation or examination of the accused". Such request was improper and misdirected. This misdirection was as a direct result of SSG Thomas trying to represent himself. I note that such request was made without the knowledge of his individual military counsel.

Secondly, the request for or by the civilian defense counsel, Mr. Wheeler, to have Dr. Croft examine the accused was a belated request. That eleventh-hour request seems to be as a direct result of the constant change of defense counsels in this case. The request by the defense for the production of Dr. Croft as a witness is denied—especially, on sentencing.

Number one, there has been no showing of what his testimony is or would be, other than the fact that he will somehow or another give some testimony with regards to the rehabilitative potential of the accused in the matter of, I assume, pedophilia. It may be positive—it may be negative—no one knows. He is still in the investigative or preparation stages of his examination of the accused and the formulation of his opinion. That untimeliness in the preparation of the defense's case is as a direct result, again, of the accused's dismissal of his defense counsel, and I guess, his attempts to represent himself.

I do not believe that a showing that the testimony of Dr. Croft or even what the testimony would be, would be helpful to the defense, or that his presence is necessary for the determination of an appropriate sentence in this case. Right now, it may well be; again, it may not.

In light of the considerations present in this courtroom and the needs of the government—the prosecution—to complete the trial of this case without further delay, as I said before, your request to produce Dr. Croft is denied.

I would like to tell you one matter of substantial importance, here. Should there be any beneficial evidence obtained as a result of Dr. Croft's examination of the accused, such matters may be submitted to the convening authority posttrial. The convening authority has great power over the sentence. If it is probative, especially—well, if it's probative on the issue of rehabilitation potential. I would submit that, that would provide you relief from any prejudices that you might incur as a result of my ruling, do you understand? [5]

On appeal, in responding to the specified issue, appellate defense counsel filed affidavits from the appellant and Captain Walker. According to the appellant's affidavit, after he told Captain Walker that he intended to retain civilian counsel, their discussions involved the completion of a pretrial agreement, a stipulation of fact to be appended thereto, and the selection of a replacement counsel for Captain Walker who was being reassigned from Fort Sam Houston. Subsequently, Captain Walker finalized the pretrial agreement and the stipulation of fact prior to appellant's hiring of a civilian defense counsel. Captain Walker also prepared a request for individual military counsel from Fort Hood. The appellant stated he signed the request because he thought he would need another military counsel to replace Captain Walker who was about to be reassigned to a military school at Fort Leavenworth, Kansas. He claimed that he did not remember Captain Walker telling him he did not have to release him.

In his affidavit, Captain Walker stated that in November 1989, he learned that he would be attending a three-month-long course of instruction at Fort Leavenworth, Kansas, beginning in late March 1990. Al-

---

5. The military judge did not expressly rule on the civilian defense counsel's reassertion of appellant's request to be represented by Captain Walker. However, as the judge decided to proceed with the trial in that counsel's absence, it is obvious that this request was also denied.

though this was a temporary duty assignment, it was to be followed by his permanent reassignment from Fort Sam Houston in July. During the period January to March 1990, he attempted to either complete or transfer his pending cases. He negotiated the pretrial agreement in appellant's case in conjunction with the civilian defense counsel (Mr. Wheeler), with whom he "talked frequently" and whose input to the pretrial agreement "was substantial." He asserted that he had discussed the counsel options available to the appellant with him and that the appellant had voluntarily elected to discharge him and request individual military counsel after consulting with Mr. Wheeler.

## II.

■■■ A trial judge should be liberal in the granting of continuances where there is good cause for the delay. *United States v. Daniels*, 28 C.M.R. 276 (C.M.A.1959); *United States v. Nichols*, 6 C.M.R. 27 (C.M.A.1952); *United States v. Sutton*, 46 C.M.R. 826 (A.C.M.R.1972). The decision to grant or deny a continuance rests within the sound discretion of the military judge and will not be overturned except for clear abuse of that discretion. *United States v. Menoken*, 14 M.J. 10 (C.M.A.1982); *United States v. Dunks*, 1 M.J. 254 (C.M.A.1976); *United States v. Kinard*, 45 C.M.R. 74 (C.M.A.1972); Article 40, UCMJ; Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 906(b) [hereinafter R.C.M.]. Whether a trial judge has abused his discretion depends on the fairness with which the judge has balanced the competing interests of the parties. This court has held:

> Where the accused is the moving party, the military judge must weigh the underlying basis for the continuance against the adverse consequences to the prosecution from delaying the trial. If the accused's request for a continuance is grounded on a substantial right and where the prosecution's only basis for opposition is administrative inconven-

ience, its denial may constitute an abuse of discretion. *See, e.g., United States v. Furgason*, 6 M.J. 844, 848 (NCMR 1979). However, if the request, though purporting to assert a substantial right, in fact does not do so or is not made in good faith but solely to vex the prosecution, it need not be countenanced and may properly be denied. *United States v. Daniels*, 11 U.S.C.M.A. 52, 28 C.M.R. 276 (1959); *United States v. Alicea–Baez*, 7 M.J. 989 (ACMR 1979).

*United States v. Perry*, 14 M.J. 856, 858 (A.C.M.R.1982), *pet. denied*, 16 M.J. 135 (C.M.A.1983); *accord United States v. Thomas*, 22 M.J. 57, 59 (C.M.A.1986) (*quoting Morris v. Slappy*, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) ("[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel.")).

Hence, we must ask several questions. Whether the appellant was deprived of any rights and if so whether those rights were substantial? Was the appellant's request for a continuance reasonable or was it made to harass the prosecution? Would the granting of the continuance have unduly burdened the prosecution?

The appellant alleges that the military judge's denial of a continuance effectively deprived him of several important rights. First, the right to the attendance of witnesses to testify on his behalf in mitigation and extenuation. Specifically, he asserts deprivation of the right to present psychiatric evidence from Doctor Croft, either through in-court testimony or a written evaluation report. Second, the right to effective assistance of counsel, Mr. Wheeler, who was faced with a heavy caseload and needed additional time to interview witnesses and otherwise prepare for trial. Third, the right to the effective assistance of his second civilian counsel, Mr. Alexander, whose belated appearance in the case and scheduling conflicts prevented him from being fully prepared for trial.[6]

---

**6.** The appellant also alleged that he was denied the effective assistance of the military co-counsel, Captain Walters, whose heavy caseload and distant stationing at Fort Hood arguably war-

██ The right to the attendance of witnesses in extenuation and mitigation is a fundamental entitlement of any accused and denial of a witness who will offer evidence helpful in determining an appropriate sentence may be prejudicial and warrant reversal. *United States v. Barfield,* 46 C.M.R. 321 (C.M.A.1973); *see also, United States v. Foreman,* 39 C.M.R. 249 (C.M.A.1969); *United States v. Manos,* 37 C.M.R. 274 (C.M.A.1967). In *Barfield,* the court held that a military judge abused his discretion in failing to grant the defense a continuance to obtain psychiatric evidence that would show that "sexual offenders like Barfield had a low rate of recidivism." The court noted, "[t]oday, psychiatric evaluations of offenders and the nature of their behavior are often considered. Whether such behavior is likely to be repeated or is an isolated aberration on the accused's part is obviously of importance in determining the sentence to be imposed." Of course, the defense still must adequately proffer the expected psychiatric evidence in order to preserve the issue. *See Menoken,* 14 M.J. 10.

██ We are satisfied the defense met its burden as early as the 5 April pretrial session. There is no support in the record for the military judge's findings that the defense's request for witnesses, particularly Doctor Croft, was "not timely", made at the "eleventh hour", or "would [not] be helpful to the defense." [7] The judge's suggestion at the 19 April session that the appellant could submit "any beneficial evidence ... to the convening authority· post-trial" is an acknowledgment that he understood the importance of the prospective evidence but simply refused to grant a

continuance to enable the defense to obtain it before sentencing. Furthermore, there is no evidence that the defense's request was made to harass the prosecution. To the contrary, the defense had cooperated in attempting to bring the case to trial by waiving the Article 32 investigation and by entering a plea of guilty. There was no speedy trial problem as the appellant had not been restrained. Moreover, there is no evidence that the continuance would have presented an administrative burden for the prosecution. The session on 5 April was called by the defense to facilitate scheduling of the trial so that witnesses and court-members would not be inconvenienced or the government faced with unnecessary witness fees. Finally, the psychiatric examination had already been accomplished; all that was needed was an additional two or three weeks for Doctor Croft to complete the evaluation report. Under the circumstances, we hold that the request for a continuance to obtain witnesses was reasonable and should have been granted.

██ The right of an accused to be represented by individually-selected military or civilian counsel has been long-recognized in military law. *United States v. Kinard,* 45 C.M.R. 74 (C.M.A.1972); *United States v. Donohew,* 39 C.M.R. 149 (C.M.A.1969); Article 38(b), UCMJ, 10 U.S.C. § 838(b).[8] Inherent in this right is the right to effective representation. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott,* 24 M.J. 186 (C.M.A.1987). If a lawyer believes he cannot represent a client competently, he should so inform the client and withdraw from representation subject to protection

---

ranted granting him more time to perform assistant defense counsel duties at Fort Sam Houston. Additionally, appellant alleged that he was denied the services of Doctor Croft as a defense expert assistant. In view of the other bases for holding that the military judge abused his discretion in denying the defense request for a continuance, we decline to resolve these legal questions.

7. Even an untimely request for witnesses may not justify denial of a continuance. Where the testimony is relevant and important, would not be cumulative, and where the delay would be

minimal, denial of a continuance may constitute an abuse of discretion. *United States v. Ford,* 29 M.J. 597 (A.C.M.R.1989).

8. The right to counsel of one's choice, while substantial, is not absolute and may be required to yield to the government's interest in the expeditious administration of justice. *Thomas,* 22 M.J. at 59; *United States v. Bowie,* 21 M.J. 453 (C.M.A.1986), *cert. denied,* 479 U.S. 820, 107 S.Ct. 83, 93 L.Ed.2d 37 (1986); *see also Perry,* 14 M.J. at 858–59.

of the client's interest and the approval of the court. *See generally* Dep't of Army Pam 27–26, Rules of Professional Conduct for Lawyers, Rule 1.16 (31 Dec. 87); and Model Rules of Professional Conduct Rule 1.16 (1983) (amended 1990.) "A client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services." *Id.* Comment 4. "Rulings by the military judge cannot permissibly make effective assistance of counsel impossible." *Ford,* 29 M.J. at 599. A ruling denying a defense counsel a continuance that interferes with that counsel's ability to effectively prepare and present the accused's defense may constitute an abuse of discretion. Trial judges must, therefore, weigh counsel's scheduling problems and workload and their potential adverse impact on counsel's ability to defend the accused against the necessity for speedy completion of the proceedings before denying a continuance.

■ In *United States v. Wilson,* 28 M.J. 1054 (N.M.C.M.R.1989), the Navy court found that a trial judge had abused his discretion by denying a continuance to a civilian defense counsel that ultimately amounted to a denial of appellant's right to counsel of his own choice because:

> (1) there were no apparent adverse consequences to the prosecution from delaying the trial; (2) the defense offered to forego any speedy trial claims which might otherwise result from the delay; (3) denial of the continuance request led to the withdrawal of the retained civilian counsel due to his legitimate scheduling difficulties; (4) the request itself was for a reasonable period of time, and (5) there were no prior continuance requests.

*Id.* at 1057.

Nearly all of the factors that motivated the court in *Wilson* to hold there was an abuse of discretion are present in the instant case. Although Mr. Wheeler obtained one continuance in the case, there was ample justification for another. The government did not oppose it; the appellant was not in pretrial restraint; the expected duration of the continuance (until the end of April) was not excessive; and there was a legitimate reason for it—to obtain psychiatric evidence relevant to adjudging an appropriate sentence.

By denying the continuance, the judge interfered with Mr. Wheeler's ability to adequately prepare the appellant's case in mitigation and extenuation. Once Mr. Wheeler explained this development to the appellant, the latter decided to relieve him from his duties. Under the circumstances, we hold that the judge impermissibly compelled the appellant to forgo his right to representation by Mr. Wheeler.

■ The military judge's refusal to grant a continuance to Mr. Alexander after the appellant had retained him was also an abuse of discretion. Once the military judge permitted the appellant to discharge Mr. Wheeler on 5 April, it was incumbent upon him to allow newly-retained counsel a reasonable time to become familiar with the case and to prepare for trial. We need not decide whether Mr. Alexander's request for a sixty-day continuance was unreasonable. We find that the thirteen-day period (from 6 to 19 April), begrudgingly permitted Mr. Alexander by the judge, was insufficient to enable him to prepare for trial.

■ The fact that Mr. Alexander and the appellant assented to the judge conducting the providence inquiry and *voir dire* without Mr. Alexander being present does not amount to a waiver of the judge's improper action. The judge's denial of the continuance coupled with his firmly stated intention to push on with the trial left the appellant and his counsel with little choice in the matter. If anything, the defense's assent to the judge's action reflected its resignation to, rather than agreement with, the judge's ruling. Mr. Alexander's absence was necessitated by a previous commitment to appear in a civilian court and was a legitimate reason for not appearing at the court-martial during the providence inquiry and *voir dire.* The judge should have recognized that and allowed him the necessary time to complete the civilian trial before reconvening the proceedings. *See Wilson,* 28 M.J. 1054.

The effect of the military judge's abusive failure to grant the necessary continuance was to deny the appellant a fair sentencing hearing. Accordingly, we are compelled to set aside the sentence with provision for a sentence rehearing.

### III.

The judge's ruling also affected the appellant's right to be represented by his detailed counsel, Captain Walker, during his inquiry into the providence of the appellant's plea.

The right to effective assistance of counsel and to the continuation of an established attorney-client relationship is fundamental in the military justice system. *United States v. Palenius*, 2 M.J. 86 (C.M.A.1977). An existing attorney-client relationship cannot be terminated without the accused's consent merely for the convenience of the Government. *United States v. Murray*, 20 U.S.C.M.A. 61, 42 C.M.R. 253 (1970). Instead, in the absence of an accused's consent or an application for withdrawal by the defense counsel, such a severance can only be for "good cause shown on the record." *United States v. Eason*, 21 U.S.C.M.A. 335, 45 M.J. 109 (1972). *Accord United States v. Hanson, supra* [24 M.J. 377 (C.M.A.1987)]; *United States v. Gnibus*, 21 M.J. 1 (C.M.A.1985); R.C.M. 505(d)(2)(b)(ii).

*United States v. Baca*, 27 M.J. 110, 119 (C.M.A.1988).

■ An accused represented by civilian counsel is also entitled to military counsel, whether detailed or individually selected, who shall act as associate counsel unless excused at the request of the accused. *United States v. Gnibus*, 21 M.J. 1 (C.M.A.1985); Article 38(b)(4), UCMJ; R.C.M. 506(b)(3).

■ The record and allied papers unequivocally establish that an attorney-client relationship between the appellant and Captain Walker was formed as early as 15 December 1989, and that Captain Walker counseled the appellant to plead guilty, negotiated a pretrial agreement for him and discussed the case with his civilian defense counsel (Mr. Wheeler).[9] There is also no disputing that the appellant discharged Captain Walker and submitted a request to be represented by any military counsel from the Fort Hood office of the Trial Defense Service in part, because of Captain Walker's impending reassignment. The appellant contends that while this appears to demonstrate he consented to the severance of his attorney-client relationship with Captain Walker, he did not understand that he had the right to retain him as co-counsel to Mr. Wheeler. He attributes this to having been misadvised by Captain Walker and argues such consent was uninformed and not voluntary. In contravention, the government asserts that appellant knew what he was doing when he discharged Captain Walker and requested Captain Walters in his stead. It relies on the military judge's "in-depth inquiry" of the appellant and Captain Walker's affidavit attesting that he properly advised the appellant of his right to retain him.

"Courts should not lightly indulge the waiver of a fundamental right. *Glasser v. United States*, 315 U.S. 60, 86 L.Ed. 680, 62 S.Ct. 457 (1942)." *United States v. Andrews*, 44 C.M.R. 219, 222 (C.M.A.1972). However, "[w]hen the record reveals an affirmative acquiescence to the relinquishment of a counsel right, the burden is upon the accused to 'show by a preponderance of the evidence that his acquiescence was not sufficiently understanding and intelligent to amount to a waiver.'" *United States v. Griffin*, 16 M.J. 836, 838 (N.M.C.M.R.1983) (*citing Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962)). In *Andrews*, the court rejected the government's argument that an accused waived his right to counsel by failing to object to counsel's absence where the government was responsible for terminating the attorney-client relationship and where it was

---

9. On that date, Captain Walker submitted a memorandum to the convening authority requesting a delay of the Article 32 investigation until 5 January 1990 because he had leave scheduled. The appellant's affidavit to this court dated 13 May 1991, also attests to the fact that he initially met with Captain Walker prior to the Christmas holiday.

futile for the accused and his counsel to question the government's action. Conversely, the court has found waiver in cases where the record reflected the accused was properly informed of his counsel rights, expressly or by implication consented to one or more of his counsel being absent, and was represented by another counsel familiar with his case. *United States v. Nichelson*, 39 C.M.R. 69 (C.M.A.1968); *United States v. Koren*, 38 C.M.R. 311 (C.M.A.1968); *United States v. Tavolilla*, 38 C.M.R. 193 (C.M.A.1968); *see also United States v. Tangonan*, 44 C.M.R. 916 (A.C.M.R.), *pet. denied*, 44 C.M.R. 940 (C.M.A.1972).

We need not determine whether the appellant discharged Captain Walker because he was misadvised of his counsel rights by Captain Walker or because of a self-induced misunderstanding of what those rights entailed.[10] The record amply demonstrates that the appellant's discharge of Captain Walker (and request for Captain Walters) was conditioned on having Mr. Wheeler, the only other attorney familiar with his case, as his principal defense counsel. The appellant did not hesitate to request Captain Walker as his counsel on 5 April upon discharging Mr. Wheeler after the judge denied his request for a continuance. Captain Walker performed substantial work on appellant's behalf in negotiating the pretrial agreement and in assisting Mr. Wheeler. It is reasonable to assume that Captain Walker was more familiar with the personnel and organizations at Fort Sam Houston than a defense counsel located at Fort Hood. Finally, the appellant had not requested a military counsel by name to replace Captain Walker but merely submitted a request for any defense counsel from Fort Hood. When that individual, Captain Walters, appeared as co-

counsel with Mr. Wheeler on 5 April, he neither expected nor was he prepared to represent the appellant on his own. Arguably, the appellant created this situation by discharging Mr. Wheeler at the 5 April hearing. However, an accused should not be required to go to trial with an unprepared defense counsel. *Scott*, 24 M.J. 186. In any event, Mr. Wheeler's discharge was induced by the military judge's improper denial of a continuance. Therefore, the appellant cannot be held responsible for Mr. Wheeler's departure.

■ We also find wanting, the trial judge's inquiry of the appellant concerning his discharge of Captain Walker and subsequent request for his reinstatement. The military judge's questions were conclusional in nature, interrupted the appellant during his attempts to explain his understanding of his rights, and seemed more inclined to prove that the appellant waived his right to Captain Walker's services rather than to probe for his true intent. Thereafter, the judge rejected the appellant's explanation that his release of Captain Walker was conditioned on his retention of Mr. Wheeler. We do not believe the judge acted solicitously and fairly in the conduct of the inquiry. *See Donohew*, 39 C.M.R. 149. Nor do we agree with his determination not to accept the appellant's explanation concerning his release of Captain Walker. We find that the appellant has shown by a preponderance of the evidence that he did not waive his right to the presence of Captain Walker. Therefore, the judge's denial of the appellant's request for reappointment of Captain Walker constituted a denial of his right to detailed counsel.[11]

## IV.

■ Having concluded that the appellant was improperly denied the right to

---

10. Although appellant testified that he would not have discharged Captain Walker if he had known his reassignment to Fort Leavenworth was only "temporary," we doubt the sincerity of his explanation. In any event, Captain Walker did state that his temporary school assignment was to be followed by a permanent reassignment from Fort Sam Houston. Hence, his reassignment to Fort Leavenworth was, for all practical purposes, "permanent."

11. We did not request briefs from appellate counsel as to whether the judge, by conducting the providence inquiry in the absence of Mr. Alexander, the replacement civilian defense counsel, denied the appellant his right to counsel of his own selection. As we held previously, this resulted from the judge's failure to grant Mr. Alexander a continuance. Therefore, this too constitutes a denial of appellant's right to counsel.

detailed counsel and to civilian counsel of his own choice, we must now decide whether we must set aside the findings as well as the sentence. Critical to our determination is the standard we must employ for assessing harm, *i.e.*, plain error/general prejudice or harmless error/specific prejudice. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Remai,* 19 M.J. 229 (C.M.A.1985); *see also, United States v. Johnson,* 21 M.J. 211 (C.M.A.1986).[12] It is beyond argument that the right to the assistance of counsel is fundamental to a fair trial. *United States v. Mickel,* 26 C.M.R. 104 (C.M.A.1958); *United States v. Best,* 19 C.M.R. 165 (C.M.A.1955). In contested cases, "[t]he occurrence of such error dictates reversal without regard to the existence or amount of prejudice sustained." *Andrews,* 44 C.M.R. at 222. Had the record of trial demonstrated that appellant was induced to plead guilty by the denial of his right to counsel, we would have no difficulty holding his plea improvident as it would not have been voluntarily entered. *See United States v. Poole,* 26 M.J. 272 (C.M.A.1988); *United States v. Cruz,* 25 M.J. 326 (C.M.A.1987); *United States v. Thomas,* 22 M.J. 388 (C.M.A.1986), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987). The Code and the Manual do not limit an accused's right to detailed counsel merely because he has not contested the charges against him. *See generally,* Article 38(b), UCMJ; R.C.M. 502(d)(6). Nevertheless, we have found no authority requiring us to set aside an otherwise provident plea of guilty *regardless of prejudice* because the accused's appointed or chosen counsel was not present during the providence inquiry.

To the contrary, the predominant view of federal appellate courts admonishes us to test for specific prejudice. *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (case remanded to determine whether denial of right to counsel at preliminary hearing was harmless error); *Canizio v. New York,* 327 U.S. 82, 66 S.Ct. 452, 90 L.Ed. 545 (1946) (denial of counsel during arraignment and plea held harmless); *but see Hamilton v. Alabama,* 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961) (denial of counsel at arraignment was prejudicial *per se* since the arraignment was a critical stage of the proceedings under state law); *United States v. Crowley,* 529 F.2d 1066 (3d Cir.), *cert. denied,* 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 820 (1976) (denial of counsel at hearing on motion to withdraw guilty plea held harmless); *In re DiBella,* 518 F.2d 955 (2d Cir.1975) (exclusion of counsel from attending the reading of grand jury minutes during contempt proceedings held harmless); *but see Gann v. Gough,* 79 F.Supp. 912 (D.C.Ga.1948) (failure to appoint counsel for defendant at his request before arraignment and plea held prejudicial *per se* as essential to fair trial). These decisions were based on the right to counsel under the Constitution. While instructive, they do not precisely answer the question of which standard applies when the right to counsel under Article 38 of the Code is abridged.

The Court of Military Appeals' decision in *United States v. Johnson,* 21 M.J. 211 (C.M.A.1986), while not dispositive of the question, offers some insight into the standard we should apply. In *Johnson,* a military judge misadvised an accused of his counsel rights in violation of *United States v. Donohew.* Chief Judge Everett first observed that the statutory right to counsel provided to servicemembers is broader than that provided by the Sixth Amendment perhaps because, "Congress may have concluded that servicemembers, who risk their lives for their country, should be granted a right to counsel greater than that which would be minimally required by the Constitution." *Johnson,* 21 M.J. at 213. Further, deprivation of the right is not justified on the grounds that the accused received a lenient sentence as "we cannot exclude the possibility that the requested lawyer might have done even better." The Chief Judge then held that the

---

12. In *United States v. Jerasi,* 20 M.J. 719, 722 (N.M.C.M.R.1985), *aff'd* 23 M.J. 162 (C.M.A.1986), the Navy–Marine Court of Military Review further subdivided these categories. We find it unnecessary for our purposes to take the concept of prejudice that far.

Court of Military Review could have "required some showing by the accused as a precondition for his asserting a claim that he had been deprived of his statutory right to request counsel," or it could have insisted that the facts be determined during a limited hearing. *Id.* at 216.

Judge Cox's concurring opinion is clearly premised on his view that misadvice concerning the right to counsel should be tested for specific prejudice under Article 59(a) of the Code, 10 U.S.C. § 859(a) and would require the appellant "to make some allegation as to what different result might have been achieved by another lawyer if he had been present during the proceedings—*i.e.*, that the accused would not have entered a guilty plea." *Id.* at 217. However, he also opined, "[t]here is a difference between denying an accused the right to counsel and failing to advise, or misadvising, an accused as to that right. As to the latter, I do not believe reversible error necessarily occurs." *Id.*

■ We hold that the harmless error/specific prejudice standard should be applied in this case. *See United States v. Fisher,* 21 M.J. 327 (C.M.A.1986); *Remai,* 19 M.J. 229. Applying that standard, we are convinced beyond a reasonable doubt that the appellant's pleas of guilty were unaffected by the denial of his right to counsel.

Neither the appellant nor any other evidence in the record, allied papers, or post-trial affidavits has suggested that he would not have pled guilty irrespective of the denial of his rights to counsel. Rather, there is objective evidence that he would have pleaded guilty whether or not Captain Walker represented him during the providence inquiry. The appellant had a favorable pretrial agreement in the face of very serious charges. The agreement was drafted by Captain Walker with substantial assistance from Mr. Wheeler after several meetings with the appellant. Also, the main thrust of appellant's testimony during presentencing and his counsel's argument on sentence was that he was admitting guilt as a first step toward rehabilitation. Finally, despite ample opportunity to withdraw his guilty plea at trial and on appeal, he has not indicated a desire to do so. *See United States v. Hamil,* 35 C.M.R. 82 (C.M.A.1964).

We have considered the remaining allegation of error and those raised pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982) and find them to be without merit. The findings of guilty are affirmed. The sentence is set aside. A rehearing on the sentence may be ordered by the same or a different convening authority.

Senior Judge JOHNSON and Judge GRAVELLE concur.