**UNITED STATES, Appellee,**

v.

**Sergeant First Class Charlie J. DAVIS, Jr., 255–74–8896, United States Army, Appellant.**

**ACMR 9100632.**

U.S. Army Court of Military Review.

8 Dec. 1992.

Reconsideration Denied Jan. 6, 1993.

For Appellant: Captain Beth G. Pacella, JAGC (argued); Lieutenant Colonel James H. Weise, JAGC, Major Fran W. Walterhouse, JAGC, Captain Michael P. Moran, JAGC (on brief).

For Appellee: Captain Samuel J. Smith, Jr., JAGC (argued); Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Lieutenant Colonel Thomas E. Booth, JAGC, Major Kenneth T. Grant, JAGC, Major Donna L. Barlett, JAGC (on brief).

Before CREAN, WERNER, and GONZALES, Appellate Military Judges.

### Opinion of the Court

CREAN, Senior Judge:

The appellant was found guilty, contrary to his pleas, by a general court-martial composed of officer and enlisted members, of rape and forcible sodomy, in violation of Articles 120 and 125, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 925 (1982) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for eight years, forfeiture of all pay and allowances, and reduction to Private E1.

The facts of the incident that led to the charges of rape and forcible sodomy are not at issue. Suffice it to say that the appellant and the alleged victim, Ms. D, both admit that the sexual acts took place. However, Ms. D testified that the acts were done without her consent, while the appellant contended that the acts were consensual.

The appellant asserted as error that the military judge should have, *sua sponte*, granted a continuance to allow his detailed trial defense counsel time to prepare for trial. Because of the appellant's assertion, this Court then specified the issue of whether the trial defense counsel was ineffective for failing to seek a continuance to prepare for trial. The appellant also contends that attachments to a government exhibit in aggravation, Prosecution Exhibit 4, were improperly admitted. The appellant further personally contends, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), that his detailed trial defense counsel was ineffective at the Article 32, UCMJ, investigation; the evidence is legally and factually insufficient for the findings of guilty; and, the sentence is too severe. Oral arguments were heard on 14 May and 13 October 1992.

We hold that, the military judge did not err in failing to, *sua sponte*, grant a continuance; the trial defense counsel was not ineffective when he did not request a continuance at trial and at the Article 32, UCMJ, investigation; and, the evidence is legally and factually sufficient. We further hold that Prosecution Exhibit 4 was improperly admitted into evidence and the appellant was prejudiced by this error. Accordingly, we affirm the findings of guilty and will reassess the sentence.

## I. FACTS

The appellant was represented at the Article 32, UCMJ, hearing, held at the appellant's duty station in Holland in December

1990, by detailed military counsel, Captains (CPT) B and P. At his arraignment on 21 February 1991, the appellant was represented by CPT B and he dismissed CPT P. The appellant also told the military judge that he had retained civilian counsel, Mr. C, whose office was located in Frankfurt, Germany. The appellant, Mr. C, and CPT B requested a delay in the trial and agreed to a trial date of Monday, 25 March 1991.

The appellant was represented at an Article 39(a), UCMJ, session held in the morning of 25 March 1991 by Mr. C and CPT B. At the session, Mr. C informed the military judge that he had been asked by the appellant on 21 February 1991 to represent him. At that time, the appellant stated that there would be no problem in paying his fee. A few days later, the appellant came to his office and they discussed the case. The appellant again assured him that he could pay the fee and gave Mr. C a $500.00 check as a retainer.

Two weeks before the trial, on approximately 12 or 13 March 1991, Mr. C went to Holland to interview witnesses in preparation for the case. The appellant again assured him that money was on the way and that there was no problem in paying the fee. The following Monday or Tuesday, 18 or 19 March 1991, Mr. C tried to reach the appellant so that he could again go to Holland to interview witnesses he had missed the first time. He was unable to reach the appellant but, nevertheless, went to Holland on Wednesday, 20 March 1991, and saw the appellant. At that time, the appellant told him that he had learned the previous Friday, 15 March 1991, that he had not been able to obtain the money to pay the remainder of the fee. However, he gave Mr. C one thousand dollars and informed Mr. C that another thousand dollars had been sent the previous Friday (15 March 1991) to him from his life insurance company in Syracuse, New York.

They discussed ways of paying the remainder of the fee. Mr. C asked the appellant for the telephone number of the insurance company so that he could verify the money had been sent to the appellant. The appellant did not have the telephone number with him since he had left it at his house. Mr. C asked the appellant to call him the next day with the telephone number. Mr. C saw the appellant the next day, 21 March 1991, and again was told that the telephone number had been left at home. Mr. C asked the appellant to call him that evening. The appellant called that night but stated that he had been mistaken, the number was not at the house but was in his briefcase which he had left at work. Mr. C continued to work on the case "because it was late in the game, I felt that I really had to continue to represent him as counsel in the case." On Saturday of that week, 22 March 1991, the $500.00 check from the appellant for the retainer fee was returned to Mr. C by his bank for insufficient funds.

Mr. C informed the military judge:

I was very, very upset again, but still did not tell him, and did not call Captain B; did not call the military judge asking to withdraw from the case.

. . . .

At that time, I felt that I had been lied to from the beginning until the end. I felt that my anger was at such a point that it would be impossible for me to come to the courtroom and represent him because of the emotions that I had about how I had been deceived, and lawyers are only humans too, your Honor, and therefore, I called you this morning and asked for your permission to withdraw from the case.

The appellant, in response to questions by the military judge, stated that he had discussed witnesses and strategy with Mr. C and that he was satisfied with the preparation and strategy of Mr. C. He also initially informed the military judge that he wanted Mr. C to remain as his counsel. He did have a dispute with Mr. C over the fee, but he had made efforts to pay the fee. He had paid Mr. C one thousand dollars and had his insurance company, Syracuse Mutual Life, mail him a check which had not arrived for another one thousand dollars. He also made out an allotment to Mr. C for the balance of the amount owed.

The trial counsel informed the military judge that the government had brought to

Germany for the trial one witness from Fort Bragg, North Carolina, and four from Holland, including a Dutch policeman who had difficulty in coming for the trial. The court members were also in the area waiting to be called for assembly of the court.

Captain B informed the military judge that he had talked some time ago to the witnesses, except for the witness from Fort Bragg. He had talked to only one witness that morning, the Dutch policeman. He did not expect the witnesses to testify differently than they testified at the Article 32, UCMJ, investigation. All the witnesses had made statements, but he had not reviewed the statements recently. Mr. C informed the military judge that there were no witnesses for the defense with the possible exception of the appellant. The defense was prepared to present documentary evidence of good service in extenuation and mitigation if the appellant was convicted.

The military judge and the appellant had the following discussion:

MJ: Mr. C has asked me to release him from representing you. And the reason he's telling me he wants me to release him is because he feels like he hasn't been paid, which is part of the agreement before he came in here, and he's done some work for you so far to prepare for court. That's his contention. Now what I'm concerned about, I can understand Mr. C's position. He has appeared in the court and he's represented you up until this point. The government's got witnesses here from far places and they're all set to try the case on the day of the trial, now, Mr. C wants to withdraw. My concern is whether you believe that your differences with Mr. C are going to affect the defense that you're going to get.

ACC: Yes, sir.

MJ: You do think so?

ACC: Well, I've talked to him. Yes, sir. He expressed that to me.

MJ: Okay. So, and then my question is, what—what do you want to do in this case? Do you want to continue with Mr. C? Can you understand his position? His position is that, you know, he repre-

sented—let's take a worst case scenario from your standpoint. Let's take a position where you're convicted.

ACC: Yes, sir.

MJ: And maybe you have a few disputes about the way the case ought to be presented but generally, you're—right now, generally you agree with what he said. You realize he's a lawyer and there are a lot of shots he has got to call as your defense counsel. And he calls them. And he puts on a vigorous defense but nonetheless the worst case scenario is you're convicted. Okay? Do you think that you are going to have any doubts in your mind as to whether he did the best he could in your case?

ACC: I probably will, sir.

MJ: Okay, Is there anything further by either party?

DC: One moment sir, please.

MJ: Okay. Do you want more time to talk? Do you need more time to talk to your client, your counsel?

ACC: No, sir.

MJ: Okay.

ACC: If Mr. C wants to get released, sir, I agree.

MJ: Okay, Mr. C, you're released.

The appellant was represented at trial by CPT B (detailed counsel) and CPT P (individual military counsel), who was reassigned to the case by the Trial Defense Service and had been present in the courtroom during the discussion on Mr. C's withdrawal. The court recessed for one hour and forty minutes to permit the defense team to finish their preparation. The defense did not ask for a continuance of the trial, but only asked for a continuance, which was subsequently granted, to interview the witness from Fort Bragg.

## II. THE CONTINUANCE

██ There is a two-step analysis to resolve the issue of whether a continuance should have been granted. We must first determine the propriety of the military judge's decision to release Mr. C from his representation of the appellant. If Mr. C was properly released, we must then assess

whether a continuance should have been given to the counsel assigned to represent the appellant. In both parts of the analysis, the standard of review is an abuse of discretion.

▆ In resolving questions involving alleged abuses of discretion, appellate courts are required to balance the competing interests of the appellant and the government. With respect to the judge's decision to release Mr. C, those interests are the appellant's right to individually selected civilian counsel versus the government's need for expeditious completion of the trial. While the appellant's right to individually selected counsel has long been recognized in military law, it is not absolute and may, in the appropriate cases, be required to yield to the government's interest in the expeditious administration of justice. *Morris v. Slappy*, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983); *United States v. Kinard*, 45 C.M.R. 74 (C.M.A.1972); *United States v. Donohew*, 39 C.M.R. 149 (C.M.A. 1969); *United States v. Thomas*, 33 M.J. 694, 700 (A.C.M.R.1991). The exercise of the right to civilian counsel "cannot operate to unreasonably delay the progress of the trial." *United States v. Montoya*, 13 M.J. 268, 274 (C.M.A.1982); *see United States v. Thomas*, 22 M.J. 57, 59 (C.M.A. 1986).

### A. Release of Counsel

▆ When a lawyer believes that he cannot competently represent a client, he should inform the client and seek permission of the competent authority to withdraw from the case. *United States v. Jackson*, 34 M.J. 783, 786 (A.C.M.R.1992); *see generally*, Dep't of Army, Pam. 27–26, Rules of Professional Conduct for Lawyers (Dec.1987). However, the mere fact that a counsel has not been paid is not a sufficient reason to allow counsel to withdraw. There must be a showing of an actual conflict that prevents the counsel from effectively representing the client. *United States v. Uptain*, 531 F.2d 1281 (5th Cir. 1976). In determining whether counsel should be permitted to withdraw, we will consider the timeliness of the request; the

adequacy of the military judge's inquiry into the conflict; and, whether the conflict is so great that it results in the total lack of communication preventing an adequate defense. *See United States v. Iles*, 906 F.2d 1122 (6th Cir.1990).

▆ In this case, the appellant selected his civilian counsel, but he was unable to pay the legal fee. It was through his own action of paying with a bad check, of not making adequate preparations for payment, and of not providing his counsel with the correct information concerning payment when asked, that his civilian counsel believed he could not competently represent his client. Mr. C continued to prepare for trial even though he had concerns about representing the appellant because he recognized his representation obligation until release by competent authority. The proverbial straw that broke the camel's back, the return of the retainer check, occurred the Saturday before the start of trial. At the first opportunity thereafter, Mr. C felt compelled to request permission of the military judge, the correct competent authority, to withdraw from the case. The military judge made an extensive inquiry into the dispute and ensured that the appellant knew and understood Mr. C's position and its impact on his representation. The conflict between Mr. C and the appellant was such that Mr. C believed that he could not competently represent the appellant. The appellant's actions had caused his counsel not to be able to effectively and competently represent him. Accordingly, we hold that the military judge did not err in permitting Mr. C to withdraw from the case.

### B. The Continuance

▆ We now turn to whether the military judge erred in not, *sua sponte*, granting a continuance to permit the military trial defense counsel to prepare for trial.

▆ Whether a continuance should be granted rests within the sound discretion of the miliary judge and his decision will not be overturned except for clear abuse of that discretion. UCMJ art. 40; *United States v. Menoken*, 14 M.J. 10

(C.M.A.1982); *United States v. Dunks*, 1 M.J. 254 (C.M.A.1976). A continuance may be granted if there is an insufficient time for preparation. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 906(b)(1) discussion. It has been held to be an abuse of discretion for a military judge not to grant a continuance when new counsel, unfamiliar with the case, is retained by the appellant. *United States v. Keys*, 29 M.J. 920 (A.C.M.R.1989). Also, it is error to not grant a continuance when counsel does not have a reasonable and adequate opportunity to prepare for trial. *Thomas*, 33 M.J. at 702; *United States v. Smith*, 40 C.M.R. 418 (A.C.M.R. 1968).

When the military judge permitted Mr. C to withdraw, he determined from CPT B that he had interviewed the witnesses and that he was basically prepared to represent the appellant. He permitted CPT B to take time to consult with Mr. C and CPT P and finish his preparation. He granted counsel time to interview the one witness that he had not previously interviewed. Captain B was not new to the case; he had previously investigated and did some preparation for the trial. He had not done substantial work on the case since Mr. C had been retained, but he had done substantial work before then. He knew what needed to be done to effectively represent the appellant. We find that the military judge did not abuse his discretion in not *sua sponte* granting a continuance. Captain B did not request a continuance and he had been on the case and was familiar with the facts and witnesses. In balancing the interests of the government which had brought witnesses from the United States and Holland to the site of the trial, with that of the appellant for a fair trial, we hold that the decision to proceed with the trial was not an abuse of discretion.

### C. Effectiveness of Counsel

 We also find that CPT B was not ineffective because he did not request a continuance. The standard for measuring claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This standard has been adopted for courts-martial. *United States v. Scott*, 24 M.J. 186 (C.M.A.1987). Under *Strickland,* the appellant must first show that his defense counsel's performance was deficient, and second, the deficient performance prejudiced the defense so as to deprive the appellant of a fair trial. "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Scott*, 24 M.J. at 188.

Captain B had worked on the case and was familiar with the testimony of the witnesses. Our review of the record shows that he effectively cross-examined all witnesses to bring out effective points for the appellant. We find that CPT B was not ineffective in not seeking a continuance and that his performance met the standards of *Strickland* and *Scott.*

### III. OTHER ISSUES

We have also carefully considered the other issues raised by the appellant, both personally pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and through counsel, and find them to be without merit. The appellant contends that he was denied his right to a speedy trial. The offense took place on 15 April 1990, and the appellant was arrested by Dutch police on 25 April 1990. The Dutch prosecutor released jurisdiction to the United States on 17 July 1990. Charges were preferred on 4 December 1990, and referred to trial on 29 January 1991. The first session of the trial was held on 21 February 1991. The appellant was not subject to any pretrial restraint. The charges were preferred against the appellant well within the statute of limitations. UCMJ art. 43(b)(1). The government's accountability for time did not start to run until 4 December 1990. Accordingly, we hold that the appellant was not denied his right to a speedy trial.

The appellant also contends that the evidence is not legally and factually sufficient to support the findings of guilty. We have applied the standards of *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and *United States v. Turner,* 25

M.J. 324 (C.M.A.1987), and find that the evidence is legally and factually sufficient to support the findings of guilty.

■ Finally, the appellant contends, and the government concedes, that the military judge erred when he admitted, over defense objection, attachments to Prosecution Exhibit 4, a general officer letter of reprimand. The letter of reprimand had been given to the appellant for an offense that was dismissed at a general court-martial for lack of speedy trial. The attachments contained the Court–Martial Order that revealed that the charges were dismissed for lack of speedy trial. The government contends that the appellant was not prejudiced by this error because the underlying matter giving rise to the dismissed charges were contained in the properly admitted letter of reprimand. However, we find that there is always the strong possibility of prejudice when a sentencing authority is advised that an accused soldier has previously escaped punishment because of a "technical" dismissal of the charges against him. It was error for the military judge to permit the court members, as the sentencing authority, to know that the appellant had a previous general court-martial dismissed on technical grounds. We will correct this error by reassessing the sentence.

The findings of guilty are affirmed. Reassessing the sentence based on the error noted, the entire record of trial, and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986), we affirm only so much of the sentence as provides for a bad-conduct discharge, confinement for six years, forfeiture of all pay and allowances, and reduction to Private E1.

Judge WERNER and Judge GONZALES concur.